[Cite as *State v. Zimpfer*, 2016-Ohio-7330.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26857 |
| | : | |
| v. | : | T.C. NO. 12CR3315 |
| | : | |
| THOMAS S. ZIMPFER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___14th___ day of _____October_____, 2016.

. . . . . . . . . . .

ANDREW FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Thomas Zimpfer appeals from a judgment of the Montgomery County Court of Common Pleas, which, after a hearing, denied his petition for post-conviction relief based on ineffective assistance of counsel. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} After a jury trial in October 2013, Zimpfer was convicted of four counts of rape, in violation of R.C. 2907.02(A)(2), and three counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A). He was acquitted after a bench trial of four sexually violent predator specifications.

{¶ 3} The facts underlying Zimpfer's convictions were described in detail in our opinion on Zimpfer's direct appeal from his convictions. *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401. Stated simply, the charges stemmed from five incidents between November 2004 and November 2009, when L.R., the complainant, was between 13 and her eighteenth birthday. Zimpfer, his wife, and two children were neighbors of L.R. Zimpfer's wife, Erika, and L.R. became very close, and L.R. babysat for the Zimpfers' infant. On different occasions when L.R. was babysitting at the Zimpfers' home, Zimpfer engaged in inappropriate sexual acts with her. These acts included touching her breasts and vaginal area and penetrating her vagina with his fingers, with a sex toy, and with his penis.

{¶ 4} Zimpfer's petition for post-conviction relief focused on the fifth incident, which the parties refer to as "the weeding incident." We described this incident in our opinion on Zimpfer's direct appeal, as follows:

The final incident occurred when L.R. was sixteen. L.R. testified that at this juncture, she was getting along better with her family and had been going to the Zimpfer residence very sporadically. However, one day Erika[1] sent a text message to L.R.'s father asking if L.R. could come to the

---

[1] The exhibits attached to Zimpfer's petition for post-conviction relief reflect that Mrs.

residence and weed the flowerbeds. L.R.'s father sent her to the Zimpfers at Erika's request.

[D.S., L.R.'s boyfriend][2] asked her not to go to the Zimpfer residence that day, but L.R. testified that she believed if she refused, she would arouse suspicion. L.R. drove her car over to the Zimpfer residence and parked very close to the flowerbeds. L.R. testified that she did not observe any of the vehicles that Zimpfer drove. Accordingly, L.R. assumed no one was home and she would be safe. Zimpfer, however, emerged from the house while L.R. was weeding, grabbed her by the arm, and pulled her into the house. L.R. attempted to fight him off, but Zimpfer overpowered her. He removed her pants, pushed her up against the sectional sofa in the living room, and penetrated her vagina with his penis. Thereafter, L.R. pulled her pants up, ran outside the house, and retrieved her phone. L.R. sent a text to [her boyfriend] in which she asked him to come and help her. Zimpfer remained in the house.

Upon arriving at the Zimpfer residence, [L.R.'s boyfriend] located L.R. near the flowerbeds. [He] testified that L.R. seemed very upset and was acting uncharacteristically emotional. At this point, [her boyfriend] went to [the] house and beat on the front door. Zimpfer did not come to the door, nor did he come outside while L.R. and [her boyfriend] were still there. L.R. finished the weeding because she did not want Erika to be suspicious

Zimpfer's first name is spelled Erika, not Ericka, which is how we spelled it in our prior opinion. Mrs. Zimpfer's name is corrected to Erika throughout.
[2] In our prior opinion, we incorrectly referred to L.R.'s boyfriend as D.P.

regarding why the job was not done.   L.R. and [her boyfriend] eventually left and went back to her house.

(Footnotes added.) *Zimpfer* at ¶ 18-20.   Both L.R. and D.S. had testified about the weeding incident at trial.[3]

{¶ 5} During their testimony, L.R. and D.S. both indicated that they knew each other since middle school, had dated, and had children together.   L.R. testified that she was 14 when they started dating, and she stated that her children were born in 2009 (when L.R. was 17) and 2011 (when L.R. was 19).   Defense counsel did not cross-examine D.S. about whether L.R. had represented that she was a virgin when she and D.S. first had sex.   However, the trial court had issued a pretrial ruling precluding defense counsel from eliciting testimony regarding L.R.'s sexual activity, other than the sexual activity between her and Zimpfer, and claims that L.R. was sexually abused by someone other than Zimpfer.   (Oct. 22, 2013 Order).

{¶ 6} L.R. disclosed the abuse by Zimpfer to the police in August 2012, and Zimpfer was ultimately indicted for and convicted of multiple counts of unlawful sexual conduct with a minor and rape.   The trial court sentenced Zimpfer to an aggregate sentence of 33 years in prison.   Zimpfer was also designated a Tier III sex offender/child victim offender.

{¶ 7} Zimpfer appealed from his convictions, claiming that the trial court erred by admitting the expert testimony of a clinical child psychologist, who testified at trial regarding the behavioral characteristics of children who have been sexually abused.   He also asserted that his rape convictions were based on insufficient evidence and against

---

[3] The trial transcript is part of the record before us.

the manifest weight of the evidence, because the evidence did not support a finding of force by an authority figure, and that the court erred in giving a jury instruction concerning his status as an authority figure. Zimpfer claimed that his attorney rendered ineffective assistance by failing to object to the admission of the psychologist's testimony and to the jury instruction pertaining to his status as an authority figure. Finally, Zimpfer claimed that these cumulative errors deprived him of a fair trial. Zimpfer did not challenge the trial court's order regarding the Rape Shield Law. We rejected Zimpfer's assignments of error and affirmed his conviction. *Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401.

{¶ 8} On September 8, 2014, Zimpfer filed a petition for post-conviction relief, claiming ineffective assistance of counsel. The crux of Zimpfer's argument was that trial counsel was allegedly made aware of information, prior to trial, that could have been used to impeach the testimony of his wife, Erika, and the complainant, L.R., but counsel failed "to pursue or use it." The petition specifically alleged that counsel was informed that Erika had been involved in two extramarital affairs and that Erika fabricated evidence and tampered with witnesses after Zimpfer confronted her about the affairs. Erika allegedly told Zimpfer repeatedly that she could make his "situation" go away. The petition further raised that L.R.'s boyfriend, D.S., never mentioned the weeding incident to Pat Tannreuther, the investigator for the Public Defender's Office, and that D.S. testified at trial about the weeding incident after a visit from Erika. Zimpfer requested a hearing on his petition.

{¶ 9} Attached to the petition were affidavits from Zimpfer and his close friend,

Shannon Bemis, various purported meeting notes, and copies of correspondence and text messages. Zimpfer also stated that his current attorney had his (Zimpfer's) cell phone with more than 250 text messages, as well as a DVD that included Erika's statements concerning "making this all go away." After a conference call, the trial court ordered defense counsel to provide copies of the text messages and DVD to the State and the trial court. Defense counsel complied with the court's order in late December 2014 and/or early January 2015. (*See* Doc. #15; Order Requiring State's Counsel to File its Memorandum In Opposition to Defendant's Petition for Post Conviction Relief Not Later Than Monday, January 12, 2015.)

{¶ 10} The State filed its responsive memorandum on January 7, 2015. The State noted that the majority of Zimpfer's claims were that Erika was having extramarital affairs and used the criminal justice system to manipulate friends into making false allegations against him. The State asserted that Zimpfer's evidence to support these claims – multiple text messages between Zimpfer and Erika's lover and three voice recordings – did not substantiate Zimpfer's allegations. The State also argued that Zimpfer did not demonstrate that his trial counsel was ineffective for failing to use the evidence of Erika's affairs at trial. The State further asserted that no ineffective assistance of counsel was demonstrated based on counsel's failure to use information obtained in interviews with D.S.; the State noted that the defense investigator could not have testified about her interview with D.S. about the weeding incident, because D.S. did not provide a prior inconsistent statement.

{¶ 11} On January 21, 2015, the trial court conducted a hearing with counsel

during which the court apparently requested that defense counsel clarify in writing his requested relief, provide the standard for granting a hearing on a petition for post-conviction relief, and identify his proposed witnesses. The record does not contain a transcript of this hearing, but it is referenced in the parties' subsequent filings and the trial court's decision on the petition.

{¶ 12} On January 30, 2015, Zimpfer filed a memorandum, stating the standard for granting a hearing and indicating that his proposed witnesses were Bemis, Tina Beech, D.S., Tannreuther, and himself (Zimpfer).

{¶ 13} On February 17, 2015, the trial court granted Zimpfer's request for a hearing on his petition. In its analysis, the court indicated that Zimpfer had *not* met the standard for a hearing. It reasoned that (1) strategic decisions are presumed to fall within the range of reasonable professional assistance and there was no evidence that, even assuming deficient performance, the outcome would have been different, (2) Zimpfer's affidavits relied significantly on hearsay, and (3) Zimpfer and Bemis were "unquestionably interested in the outcome of the petition." Nevertheless, the court granted a hearing "in an abundance of caution."

{¶ 14} The hearing on Zimpfer's petition was held on March 27, 2015. Again, no transcript of this hearing was prepared. However, the trial court's decision on Zimpfer's petition indicates that Tannreuther, Bemis, Zimpfer's trial counsel, and Zimpfer testified at the hearing. *See* Doc. #43. The trial court later summarized the issues raised as follows:

> [A]t the March 27, 2015 Hearing and/or Defendant's post-hearing
> briefing, Defendant and his counsel abandoned all issues raised in his

Petition except for the following claims of ineffective assistance of counsel based upon [trial counsel's] decisions: 1) not to pursue the theory that the Complaining Witness was a "virgin" when she first engaged in sexual intercourse with [D.S] and thus somehow perjured herself when she testified that Defendant raped her; 2) not to call Ms. Tannreuther or Ms. Bemis as witnesses at trial; 3) not to impeach [D.S]'s trial testimony regarding an alleged "weeding incident" during which his truck window was broken; and 4) not to elicit testimony regarding Erika Zimpfer's ("Mrs. Zimpfer") alleged extramarital affairs that somehow would have demonstrated her bias against Defendant.

The real crux of Defendant's Petition is that, at the time the Complaining Witness first had sexual intercourse with her boyfriend, [D.S], she was a "virgin," hymen intact, and "bled" as the result of her first sexual intercourse with [D.S] – a time presumably after she claims she was raped by Defendant. * * *

(Emphasis omitted.) The parties filed post-hearing memoranda on the issues raised at the hearing. *See* Doc. #37-#39.

{¶ 15} In June 2015, the trial court, sua sponte, ordered the Montgomery County Public Defender to produce its entire file regarding Zimpfer's case for in camera review by the court. The Public Defender's Office complied with this order. It is unclear whether the documents were returned to the Public Defender's Office; they are not part of the record before us.

{¶ 16} On September 10, 2015, the trial court "conducted on the record a final

follow-up conference with the parties' respective counsel." *See* Doc. #43. This conference also was not transcribed. However, the record reflects that no testimony was presented at this hearing. *Id.*

**{¶ 17}** On September 14, 2015, the trial court denied Zimpfer's petition. The trial expressly found Tannreuther's and trial counsel's testimony to be credible "in all respects." The court further found that Bemis's and Zimpfer's testimony was not credible "insofar as it would contradict Ms. Tannreuther's and [trial counsel's] testimony." The trial court's decision indicated that it had admitted into evidence Defense Exhibits A and B, as well as Court's Exhibits I and II, which will be described below; these exhibits are part of the record before us.

**{¶ 18}** The trial court made the following factual findings:

Ms. Bemis claims she conversed three times with [D.S] in February and March 2013.

Ms. Bemis claims that on February 11, 2013, she ***individually*** spoke with [D.S] at his apartment ("February 11, 2013 Conversation") from which she claims taking detailed notes of [his] responses reflecting her claim that [D.S] stated that the Complaining Witness told him when they first had sex that she was a "virgin." As noted above, Court's Exhibit I is a "clean" copy of Ms. Bemis' alleged notes from that first conversation and Defendant's Exhibit B is a copy of the same alleged notes which contains certain ***later added*** interlineations and material which were ***not*** in her notes and were ***not*** in her hand. Rather, these

added interlineations and material were written after trial by a third party.

Ms. Bemis also claims that approximately one week later, she spoke with [D.S] a second time at his apartment during which Mrs. Zimpfer was also present.

Then, on March 4, 2013, Ms. Tannreuther interviewed [D.S] at Ms. Bemis' home during which Ms. Bemis was also present ("March 4, 2013 Interview"). Ms. Tannreuther asked [him] open-ended questions about the situation and those involved. After [D.S]'s March 4, 2013 Interview, Ms. Tannreuther made a report and provided that report to [trial counsel].

The Court finds, as a matter of fact, that Ms. Bemis is an unapologetic cheerleader for Defendant, believing him incapable of committing the acts of which he now stands convicted by a jury of his peers.

The Court finds, as a matter of fact, that Ms. Bemis created at least three sets of notes relating to her conversations with [D.S]: 1) her February 11, 2013 notes; 2) her longer, numbered paragraph set of notes; and 3) her "random" notes. **None** of these notes makes **any** mention that [D.S] claimed the Complaining Witness "bled" when he first had sexual intercourse with her. The first and third sets of notes merely claim that [D.S] stated that the Complaining Witness **told him** when they first had sexual intercourse that she was a "virgin." **None** of the sets of notes makes **any** mention of the weeding incident to which [D.S] testified

at trial – and why would they? – nobody questioned [D.S] regarding a weeding incident and he volunteered nothing regarding the same.

The Court finds, as a matter of fact, that [D.S] *never* told Ms. Bemis, or anybody else for that matter, that the Complaining Witness "bled" following their first sexual intercourse. Simply put, the Court finds it utterly incredible that Ms. Bemis, Defendant's advocate and champion, would have *somehow* failed *in any of her notes* to make mention of "bleeding" by the Complaining Witness following her first sexual intercourse with [D.S].

The Court finds, as a matter of fact, that Ms. Tannreuther informed [trial counsel] that she would be *unavailable* on the trial date owing to vacation plans and that she was not called as a witness owing to [trial counsel's] *strategic decision* not to call her.

The Court finds, as a matter of fact, that [trial counsel] made a *strategic decision* not to call Ms. Bemis, who would merely have testified as to Defendant's character as a "good person," *somehow* incapable of committing the offenses of which he has been convicted.

The Court finds, as a matter of fact, that [trial counsel] was aware at the time of trial that Mrs. Zimpfer and Defendant were in the process of divorcing and that [trial counsel] knew of Mrs. Zimpfer's alleged affair with a North Carolina boyfriend. As a matter of fact, [trial counsel] made a *strategic decision*, based upon his *experience as a defense*

***attorney who had tried similar cases***, that he would not offer evidence of Mrs. Zimpfer's romantic life, particularly since, as a matter of fact, at trial both Mrs. Zimpfer and Defendant testified they were estranged so that Mrs. Zimpfer's alleged bias against Defendant was already established.

Regarding Court's Exhibit I/Defendant's Exhibit B, the Court finds as a matter of fact that Ms. Bemis never provided [trial counsel] a copy of these notes from her February 11, 2013 conversation with [D.S]. As a matter of fact, however, based upon the Court's ***personal*** review of the Public Defender's file for its representation of Defendant, Ms. Bemis ***did provide*** [trial counsel] with a copy of her lengthy numbered paragraph notes and her "random" notes.

(Emphasis in original.)

{¶ 19} In denying Zimpfer's petition, the trial court reached the following conclusions. First, the court held that the issue of L.R.'s sexual activity with D.S. was barred by res judicata; the trial court had issued a pretrial order excluding testimony or evidence of L.R.'s sexual activity other than sexual activity with Zimpfer, and that issue had not been raised on appeal.

{¶ 20} Second, the court held that trial counsel made objectively reasonable decisions not to call Tannreuther or Bemis, that those decisions fell within trial strategy, and that counsel's decisions would not be second-guessed by the trial court in a petition for post-conviction relief. The court noted that Tannreuther was

unavailable and, even if she had been, she "never questioned [D.S.] about the alleged weeding incident and he had offered nothing on the subject. Further, Ms. Tannreuther knew nothing of the 'virginity' issue." The court stated that Bemis's testimony would have consisted of nothing more than inadmissible character evidence.

{¶ 21} Third, the court concluded that L.R.'s statements regarding her virginity were barred by the trial court's pretrial ruling, were inadmissible hearsay, and were barred by the Rape Shield Law. The court further reasoned:

Although Rape Shield under R.C. 2907.02(D) arguably does not apply to charges of unlawful sexual conduct pursuant to R.C. 2907.04, both the Court's October 22, 2013 Order and Evid.R. 403(A) would have prevented [trial counsel] from introducing evidence regarding the Complaining Witness' and [D.S.'s] sexual relationship. For example – no scientific evidence could support the old wives' tale that a woman, when first sexually penetrated, necessarily "bleeds." Therefore, such "evidence" even if otherwise admissible despite Rape Shield, would have been excluded pursuant to Evid. R. 403(A) as simple nonsense.

{¶ 22} Fourth, the trial court concluded that trial counsel's "objectively reasonable decision not to attempt impeachment of [D.S.] regarding the alleged weeding incident could never be ineffective assistance." The court found that D.S. was not questioned about the incident, by anyone, prior to trial, and D.S. had not volunteered the information. The court stated, "[Trial counsel's] decision to avoid

jousting with [D.S.] on cross examination about the matter was sound trial strategy, especially since [D.S.] had made no prior inconsistent statements on the matter and seasoned trial counsel do not ask questions to which they do not know the answers."

{¶ 23} Fifth, the trial court found that trial counsel had made an objectively reasonable decision "not to drag Mrs. Zimpfer's romantic life into the trial, especially since both she and Defendant testified at trial that they were separated thereby establishing she hardly remained enamored of her estranged husband." The court further reasoned that such evidence would have been inadmissible under Evid.R. 403(A) and 403(B).

{¶ 24} Finally, the court noted that it, sua sponte, assured itself that no *Brady* violation had occurred.

{¶ 25} Zimpfer appeals from the trial court's denial of his petition for post-conviction relief.

## II. Post-Conviction Relief: Ineffective Assistance of Counsel

{¶ 26} "A post[-]conviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Stefen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *see also State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48. To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 27} We review the trial court's denial of a petition for an abuse of discretion. *Gondor* at ¶ 52. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Hancock*, 108 Ohio St.3d

57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 28} Moreover, when the trial court has ruled on a petition for post-conviction relief after a hearing, we must give deference to the trial court's findings of fact. *Gondor* at ¶ 47-48. A reviewing court should not overrule the trial court's findings on a petition for post-conviction relief if those findings are supported by competent and credible evidence. *Id.* at ¶ 58.

{¶ 29} Zimpfer's petition for post-conviction relief asserted claims of ineffective assistance of counsel. In general, we review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 30} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the trial would have been different. *See id.*; *Bradley* at 142. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

{¶ 31} On appeal, Zimpfer claims that the trial court erred in denying his petition

based on ineffective assistance of counsel. First, he asserts that the outcome of the rape charge based on the weeding incident would have been different had trial counsel called Tannreuther or Bemis to challenge D.S.'s testimony that the weeding incident had actually occurred. Second, he argues that counsel should have called Bemis to testify regarding D.S.'s out-of-court statement that L.R. had said that she was a virgin when she and D.S. first had sex together. Zimpfer asserts that the Rape Shield Law does not bar this statement. Finally, Zimpfer asserts that the evidence at the hearing on his petition did not support a finding that trial counsel made objectively reasonable decisions.

{¶ 32} At the outset, we emphasize that the record does not contain a transcript of the hearing on Zimpfer's petition. Under App.R. 9(B), the appellant has the duty to provide a transcript for appellate review. Absent a written transcript, we cannot speculate what the testimony at the post-conviction relief hearing was, and therefore have limited bases from which we can review any alleged legal error by the trial court. In general, we are constrained to presume the regularity of the trial court's proceedings and that the evidence before the trial court supported the trial court's judgment. *Smith v. Duran*, 2d Dist. Montgomery No. 20827, 2005-Ohio-4729, ¶ 14.

{¶ 33} With the limited record before us, we cannot conclude that the record does not support the trial court's finding that trial counsel made objectively reasonable decisions. In the absence of a transcript, we do not know what trial counsel testified to at the hearing on Zimpfer's petition, including the rationale that he provided for failing to call Bemis and Tannreuther to testify, to cross-examine D.S. about his sexual activity with L.R, and to question Erika about her affairs. The trial court expressly credited trial counsel's testimony, and we must presume that the evidence supported the trial court's

conclusion that trial counsel's reasons constituted reasonable trial strategy.

{¶ 34} Even considering the limited evidence before us, we cannot conclude that trial counsel acted deficiently. First, Bemis's notes indicate that D.S. stated that L.R. told him [D.S.] that she was a virgin when they first had sex, and the trial court found that trial counsel was provided notes that contained that information. Regardless, even if trial counsel wanted to use that information during his cross-examination of D.S., the trial court had issued a ruling precluding defense counsel from eliciting testimony regarding L.R.'s sexual activity, other than the sexual activity between her and Zimpfer.

{¶ 35} At oral argument, Zimpfer's counsel contended that the trial court's October 22, 2013 ruling only excluded testimony or evidence of sexual activity, as opposed to the absence of sexual activity. However, the questions about L.R.'s alleged statement would necessarily be asked in the context of her first sexual activity with D.S., who is not the defendant. Trial counsel cannot be faulted for complying with the trial court's Rape Shield ruling, regardless of the correctness of that ruling. Any argument that the trial court erred in precluding the eliciting of such evidence was a matter for appeal.

{¶ 36} Furthermore, any testimony by Bemis or D.S. that L.R. had reported being a virgin when she first had sex with D.S. would be inadmissible hearsay. Trial counsel's failure to ask D.S. about L.R.'s statement regarding her virginity and to call Bemis regarding D.S.'s comment to her about L.R.'s virginity does not constitute ineffective assistance.

{¶ 37} The trial court found that D.S. never told Bemis that L.R. had bled following their first intercourse. With the record before us, we find nothing to cast doubt on the trial court's finding. We find no basis for a claim of ineffective assistance of counsel

based on trial counsel's failure to use information about L.R. and D.S.'s first sexual activity at trial.

{¶ 38} In addition, we find nothing in the record to suggest that trial counsel acted unreasonably in failing to cross-examine D.S. about his alleged failure to mention the weeding incident prior to trial. Nothing in the exhibits suggests that D.S. was asked about the weeding incident prior to trial, and we have no basis in the record to conclude that the trial court erred in concluding that counsel made a reasonable strategic decision "to avoid jousting with [D.S.] on cross examination about the matter."

{¶ 39} We find nothing in the limited record to support that Bemis and Tannreuther had admissible testimony to offer at trial. And, we find nothing to suggest that trial counsel acted deficiently when he failed to raise Erika's extramarital affairs at trial.

{¶ 40} Zimpfer's assignment of error is overruled.

### III. Conclusion

{¶ 41} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Andrew French
George A. Katchmer
Hon. Steven K. Dankof