[Cite as *State v. Quinn*, 2017-Ohio-8107.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-64 |
| | : | |
| v. | : | T.C. NO. 13-CR-869 |
| | : | |
| JAMES E. QUINN | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___6th___ day of _____October_____, 2017.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JAMES E. QUINN, Inmate No. 699-607, London Correctional Institute, P. O. Box 69, London, Ohio 43140
        Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  This matter is before the Court on the Notice of Appeal of James Quinn. Quinn appeals from the denial of his February 17, 2015 petition for post-conviction relief. We hereby affirm the judgment of the trial court.

{¶ 2}  Quinn was convicted, following a jury trial on March 24-25, 2014, of two

counts of domestic violence, in violation of R.C. 2919.25(A), felonies of the third degree; two counts of kidnapping, in violation of R.C. 2905.01(B)(1), felonies of the first degree; one count of abduction, in violation of R.C. 2905.02(A), a felony of the third degree; and one count of intimidation, in violation of R.C. 2921.04(B)(1), a felony of the third degree. After the kidnapping offenses and the abduction offense were merged for sentencing, Quinn received an aggregate consecutive sentence of 20 years. The victim of the offenses is his mother, Beverly Quinn. Quinn's convictions were affirmed on appeal. *State v. Quinn*, 2016-Ohio-139, 57 N.E.3d 379 (2d Dist.) ("*Quinn I*").

{¶ 3} Four months after his convictions, Quinn filed a motion for a new trial, which the trial court overruled. Attached to the motion were Beverly's affidavits, in which she averred in part that "[a]t this time I realized that my son could not have been the one who committed the crimes against me. I did not have my glasses on, nor my hearing aid. I am 100% sure that it was not James." This Court affirmed the judgment of the trial court on the motion for a new trial on the same day it affirmed Quinn's convictions. *State v. Quinn*, 2d Dist. Clark No. 2014-CA-95, 2016-Ohio-140 ("*Quinn II*").

{¶ 4} The relevant facts herein were set forth in *Quinn I*, ¶ 3-6, as follows:

The victim, Beverly Quinn, is a 79–year–old woman, the mother of two daughters and two sons, including the defendant, James Quinn. In December 2013, Quinn's girlfriend, Samantha Ferrell, was living with Quinn's mother, Beverly, in her two-bedroom house. At that time, Quinn was under indictment for a domestic violence incident involving his mother; as a condition of bond he was subject to a no-contact order with his mother. Late in the evening, Beverly was awakened by noise, and found Quinn and

Ferrell in her home, drinking vodka and watching television. Beverly told Quinn he was not allowed to be there and asked Quinn to leave, to turn off the television, and for Samantha to go to her room. Quinn became very angry with his mother, pushed her into a chair, and hit her. When Quinn suggested to Samantha that they take his mother to "mental health," Samantha suggested that they take Beverly out into the country and dump her. Beverly then ran to her own bedroom, locked the door, and left the house by crawling out of the bedroom window. Beverly went to a neighbor's house and called the police. During the 911 call, Quinn identifies her son, James Quinn, as the person who has abused her, and states that Quinn left her house driving a white station wagon. Quinn and Samantha left Beverly's house before the police arrived. The police took photos of Beverly's bruises, and allowed her to return to her own home after they verified it was empty and secured. One of the two officers who spoke with Beverly at this time testified that Beverly was very articulate and said it was her son who had struck her in the face. No charges were filed against Quinn at this time.

According to Beverly's testimony at trial, several hours later Quinn returned to his mother's home, without Samantha, forced entrance into his mother's bedroom, and forced his mother to leave the house with him, threatening to take her to the country and make her jump off a bridge. Beverly described her son as very angry and intoxicated on alcohol and drugs. Beverly left with her son because she felt she had no choice. He drove out into the country, stopped at a bridge and said, "if you don't jump,

I'll push you." According to Beverly, Quinn decided he could not do it, and told her that he wouldn't do anything to her as long as she did not testify against him. Beverly testified at trial that Quinn then drove to Walmart, hitting her in the head numerous times as he was driving. After he left the car, Beverly got out of the car and approached a Walmart employee for help. She told the employee that her son had hurt her and was trying to kill her. The Walmart employee verified this course of events and testified that Beverly was scared, but she knew who she was, where she was, and was not disoriented or confused. The Walmart employee testified that as Beverly was talking to him, a man came up to both of them, grabbed Beverly's arm and complained that she was trying to hurt him. The employee insisted that he let go and leave her alone. A surveillance video of the Walmart parking lot corroborates this testimony, but is taken from too far a distance to identify the man's facial features. The surveillance video shows that Beverly approached the employee, a man approached them, and then the unidentified man left in a white station wagon. The employee could not identify Quinn as the person he saw and talked with in the parking lot. Beverly testified at trial that Quinn was driving her car, which she described as a tan sedan, not a white station wagon. No witness identified Quinn as the man depicted in the video in the Walmart parking lot.

The detective who interviewed Beverly at Walmart testified that Beverly identified her son, James Quinn, as the person who attacked her in her home, who forced her into a car, threatened to harm her, and hit her

face, causing visible injuries. The detective also testified that during his interview on the scene, Beverly was very emotional, but lucid and articulate about the events of the evening. Based on this interview, the detective obtained a search warrant. A search of Beverly's home revealed evidence that her bedroom door had been damaged as the result of being forced open.

Beverly was transported to the hospital by ambulance and treated in the Emergency Room at Springfield Regional Medical Center. The paramedic who transported Beverly testified that she was alert and oriented. The ER Nurse testified that Beverly was oriented, and did not appear to suffer from dementia or any other mental defect. The ER Nurse testified that Beverly identified her son as the person who had hit and injured her.

{¶ 5} On February 17, 2015, Quinn filed a petition for post-conviction relief, asserting nine claims. In his first claim, Quinn asserted that there "was exculpatory evidence that was not disclosed to me that was in the car."  The following statement in support of the first claim is attached:

A white station wagon, claimed to be used in the crimes I am currently incarcerated for, was found on Montego Drive in the Northridge area of Clark County.  As stated in the highlighted area of the connected affidavit, a Deputy Sherriff [sic] was at the car.  The car description and plate number appeared on the police report associated with this incident. The car had a law enforcement bulletin associated with it, as it was said to be used in criminal activity, also noted by the Deputy Sherriff [sic].   The car

belonged to Beverly Quinn.   As the owner of the car, Beverly Quinn spoke to the deputy, asking if she could take the car, the deputy said no, as it was involved in a crime.   She then asked if she could remove things from the car, and again told no.   As pointed out in the affidavit, there was a cell phone and a man's jacket, neither of these items that were in the car she recognized.   I lived with her for several years and she knew I had no cell phone and she knew it was not my jacket.

I was asked by Deputy Lisle at the jail if I would release the keys to the prosecution or my Mother, as her house key was also on the key ring. I first stated to get the key from Samantha, as she had a set, and was the last to drive.

The car, nor the items in it, were ever in discovery.   The car was towed to Maines at the deputy's order.   The keys were never given to my Mother, as the people at Maines had the keys. My defense attorney * * * asked about the car in trial and was told they (the police) did not think it was impounded, but were not sure. (tr. Pg. 137)   The prosecution had the obligation, at that time, to reveal where the car was, they did not. * * * This is not so much about the car, as the items in it.

* * * This, coupled with Caleb Hilt, the store clerk's testimony, would acquit the appellant or defendant.   Mr. Hilt, the store clerk, was the only eyewitness other than Ms. Quinn.   He clearly states in his testimony several times, the defendant is not the man in the video, thus not guilty. The fact there is a cell phone and jacket, that do not belong to the defendant,

in the same vehicle, on video, the assailant is seen getting out of and into, with the testimony of a man that was conversating [sic] and checking the man's face for injuries (Tr. Pgs. 162-175) and said he is not the same man that was on trial is enough to acquit!!   * * * The jacket and cell phone, with Caleb Hilt's testimony, would cast extreme reasonable doubt. * * *

{¶ 6} Also attached is what purports to be Beverly's affidavit, which provides that on the date of the offenses, she observed Ferrell "injecting" something into the vodka Quinn was drinking, and that Ferrell struck her and told Beverly that "she would get her boyfriend to kill me." Beverly stated that after she went to sleep, she was awakened by a man she believes to be Ferrell's boyfriend, who did not let her get her glasses before removing her from her home. She stated that the prosecutor came to her apartment and accused her of lying.   Beverly stated her "prior affidavits were true.   Ms. McCormick came to my apartment and was quite nasty, saying they were not true." Beverly stated that she told the police and hospital personnel that she did not have her glasses and could not see well. Beverly questioned, "Why did Jim's attorney not question me? * * * Why did they not check the car, which had a strange male coat and telephone in it?   Neither of those belonged to Jim."

{¶ 7}  Also attached is the affidavit of Techo Peterson, a fellow inmate of Quinn's, which provides as follows:

I, Techo Peterson, herein Affiant, after being duly cautioned and sworn according to law do hereby attest that the following is true and correct to the best of my knowledge, understanding and belief:

I would testify if need be, that shortly after James Quinn was placed

in my pod in December of 2013, the jailer, I believe was Sherriff [sic] Lisle, asked James if he wanted to give his car keys to his mom or the prosecutor.

{¶ 8} In his second claim Quinn asserted that he was denied a fair trial because Beverly told the police she was not wearing her glasses in the course of the offenses and had trouble seeing, and the State did not disclose this information to Quinn.

{¶ 9} In his third claim, Quinn asserted that he was denied effective assistance of counsel because his attorney did not call "any defense witnesses," namely Kirk Savage. Savage's attached affidavit provides:

I Kirk Savage, affiant herein, after being first duly cautioned and sworn according to law, do hereby depose, attest, and swear that I am of sound mind and do state that the following is true and correct to the best of my knowledge, understanding and belief. Affiant further state that:

I Kirk Savage saw James Quinn early Saturday morning before he was on the new [sic] in December of 2013 I was puting [sic] a motor in my truck so I left from Washington Courthouse late. I got to Mark Rafferty [sic] house around 3 or 3:30 am due to heavy snow. James was asleep on the couch. I tryd [sic] to wake him but could not I stayed till 6:30 or 7:00 a.m. I left after a young girl stoped [sic] and picked him up. She was saying something about WalMart. I called the public defender's office because the Court told me he would be apointed [sic] a atterny [sic]. I called the public atterny [sic] office several times. Never got a response so I called over * *

*

There is an arrow drawn on the affidavit following the word "over," but there is nothing on

the back of the page.

{¶ 10} In his fourth claim, Quinn cited the trial court's decision overruling his motion for a new trial, in which the court noted as follows: "The victim is the defendant's mother and it is only natural that she might change her testimony as she has done in past hearings, but the Wal-Mart video clearly supports the victim's testimony at trial."  Quinn asserted that he was denied due process because the State did not disclose to Quinn that the victim had recanted previous testimony.

{¶ 11} In his fifth claim, Quinn asserted that prosecutorial misconduct occurred when Beverly "was terrorized" by the prosecutor after Beverly provided supporting affidavits for the motion for a new trial.   In his sixth claim, Quinn asserted he was denied due process rights because the "inside" video from Walmart was never retrieved, and the parking lot video is of poor quality.   In his seventh claim, Quinn asserted that he received ineffective assistance of counsel because his attorney did not investigate the car containing the phone and jacket.   In his eighth claim Quinn asserted that he received ineffective assistance of counsel because his attorney failed to interview "all witnesses," specifically Walmart employee Caleb Hilt who responded to Beverly in the parking lot. Finally, in his ninth claim Quinn asserted that he was denied due process because two days after his arrest he tested positive for heroin, which "is exculpatory evidence that easily would have shown the intent of Samantha Ferrell, a heroin addict," and further its presence in his system rendered him incapable of committing the offenses.

{¶ 12} On March 26, 2015, the State filed an Answer and a Motion for Summary Judgment.   Quinn opposed the Motion for Summary Judgment on April 14, 2015.   On July 14, 2015, the court overruled the State's Motion for Summary Judgment as being

untimely filed beyond the 20 day period provided in R.C. 2953.21(D). On October 26, 2015, the court dismissed Quinn's petition for post-conviction relief, noting that it "considered that petition, the State's answer, and the facts presented during the course of the defendant's trial," and concluded that the "petition fails to set forth substantive grounds for relief."

{¶ 13} Quinn appealed from the dismissal (2015-CA-0105). On March 9, 2016, the trial court issued findings of fact and conclusions of law, and Quinn filed a Notice of Appeal (2016-CA-0021). This Court dismissed 2015-CA-0105 on March 29, 2016 and 2016-CA-0021 on April 15, 2016 for lack of final appealable orders.

{¶ 14} On August 3, 2016, Quinn filed a "Motion Amending Post Conviction Petition." It provides as follows[1]:

The Defendant['s] original post conviction relief was filed in 2015 and the Defendant is supplementing those claims. Supplementing claim one on the original post conviction relief with One(A), One(B), One(C) and One(D). So please read One(A), One(B), One(C) and One(D) in conjunction with the [original] Claim One. Read the supplemental Claim Three(A) in conjunction with the original Claim[s] 3, 7, and 8 that are in the original post conviction relief. Please read Claim Nine (A) in conjunction with the original Claim Nine.

All of this information was discovered after the original claims were completed, and due to the trial court retaining jurisdiction, a successive post conviction relief [cannot] be submitted, so I am amending the original.

---

[1]The above text appears in capital letters and bold print in the Motion, and Quinn indicated that this is "so that the individuals that read this are not misled or lose their way."

Furthermore it would be contrary to judicial economy to produce a successive claim while the original claim is still pending in the trial court.

The Defendant will put the supplemental Claims * * * at the beginning of the amendment and then the following claims will be in numerical order starting with ten, due to the fact that the original post conviction relief ended with Claim Nine. * * * .

Quinn set forth eight additional claims.

{¶ 15} On August 8, Quinn filed a "Motion to Amend Petition for Post Conviction," which provides that he "wishes to add exhibit twenty two to his motion, which is the docket sheet that shows the defendant filed a demand for discovery prior to the defendant['s] trial."   On September 21, 2016, the trial court issued an Entry that provides:   "The Court hereby re-issues its March 9, 2016 findings of fact and conclusions of law reference the defendant's February 17, 2015 petition for post-conviction relief.   The Court's March 9, 2016 Entry is incorporated by reference herein." The court's "Findings of Fact and Conclusions of Law" are as follows:

Upon a review of the case file, defendant's motion and a review of the jury trial transcript, the Court makes the following findings of fact;

On December 13, 2013, Beverly Quinn, defendant's mother, a seventy-seven year old woman, was hit by her forty-nine year old son.

Testimony was that he threatened to dump her out in the country. Ms. Quinn, in fear of her life, escaped through a bedroom window and ran to a neighbor and police were called.

Defendant had fled the scene when officers arrived.   The officers

conducted an investigation and took pictures of Mrs. Quinn. There was visible redness on her forehead. They secured the property and encouraged Mrs. Quinn to stay with a family member or a neighbor. She stayed at her home.

Quinn returned in the early morning hours of December 14, 2013 and dragged his mother from her bed, took her to his car, and would not permit her to leave.

Defendant drove to a bridge on Ohio 334 and ordered her to jump off the bridge, saying, "if you don't jump, I'll push you". Defendant changed his mind and did not push his mother off the bridge.

He got back into the car and ordered his mother to recant her earlier statement to the police. She agreed to do so.

The defendant then drove his mother to the Wal-Mart on Bechtle Ave., Springfield, Ohio, so he could get something. Her testimony was that he repeatedly struck her with the butt of his right hand in her head. She testified that he struck her ten to fifteen times.

She received severe bruising and pain to her head. He left the car and walked towards Wal-Mart and Mrs. Quinn ran towards a Wal-Mart employee. Mr. Quinn came over to the employee and tried to grab his mother's arm but the employee stopped him. He fled the scene. All of these events were captured on a Wal-Mart surveillance video.

Police and EMS arrived on scene and Mrs. Quinn was taken to the hospital where she told the police and nurses that the injuries she sustained

were from her son, James Quinn.

THEREFORE, as a matter of law, the Court finds, based on the above findings of fact, that defendant's motion for post conviction relief does not demonstrate sufficient operative facts to establish substantive grounds for relief. The defendant has offered no new evidence that would create a strong probability that a different result would occur if he were granted a new trial. The victim's testimony was clearly supported by the surveillance video from Wal-Mart.

{¶ 16} We note that on May 1, 2017, Quinn filed a "Motion for Leave to File Brief in Excess of Twenty Five Pages," and on May 12, 2017, this Court issued an Order noting that "Appellant's brief totaling thirty-one (31) pages is accepted as filed on May 1, 2017." On May 22, 2017, Quinn filed a "Motion for Leave to Amend/Supplement the Appellant[']s Brief," seeking to add "two extra pages," and on June 7, 2017, his motion was sustained. On August 8, 2017, and on August 15, 2017, Quinn filed documents entitled "Actual Notice," which appear to be further replies to the State's brief. App.R. 18 provides for the filing of an Appellant's brief, an Appellee's brief, and an Appellant's reply brief, and not for additional Actual Notices addressed to the State's brief, and we will accordingly not consider the Actual Notices.

{¶ 17} Quinn's amended brief includes ten assignments of error, and 26 Exhibits are attached to the brief. According to Quinn, on a page entitled "Appellant[']s Exhibits," he is "submitting the exhibits used for his post conviction with new exhibits. These include exhibits 1-26. There are new exhibits with the ones used on the post conviction. I found it more effective to put the new ones with the old ones and submit them as one."

{¶ 18} We note that the State initially argues that the trial court lacked jurisdiction to consider Quinn's petition because it was untimely. The version of R.C. 2953.21(A)(2) in effect at the time Quinn's petition was filed provides in part as follows: "* * * a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *." The transcript filed in Quinn's direct appeal is time-stamped August 18, 2014. 180 days from that date is Saturday, February 14, 2015. Quinn then had until the following Monday, February 16, 2015, to file his petition. As Quinn asserts in his Reply however, that day was President's Day, and the court was closed, meaning that he had until the following day to file his petition. Civ.R. 6(A). His petition is time-stamped February 17, 2015, and we conclude it was timely filed.

{¶ 19} Quinn's first assignment of error is as follows:

THE TRIAL COURT FAILED TO CONSIDER THE APPELLANT['｝S CLAIMS BY FAILING TO RULE ON THEM INDIVIDUALLY. THE APPELLANT PROPERLY AMENDED HIS POST CONVICTION WITHOUT LEAVE OF COURT, AND THE TRIAL COURT FAILED TO RULE ON THOSE ALSO.

{¶ 20} R.C. 2953.21(A)(1)(a) provides that "Any person who has been convicted of a criminal offense * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." The statute further provides that the "petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." "We review trial court decisions on petitions for post-conviction relief

under an abuse of discretion standard." (Citations omitted.)  *State v. Perkins*, 2d Dist. Montgomery No. 25808, 2014-Ohio-1863, ¶ 27.  "The term 'abuse of discretion' has been defined as a decision that is unreasonable, arbitrary, or unconscionable." (Citation omitted.)  *State v. Howard,* 2d Dist. Montgomery No. 26060, 2014-Ohio-4602, ¶ 8.

**{¶ 21}** R.C. 2953.21(C) provides:

The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

**{¶ 22}** R.C. 2953.21(D) provides:  "Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. * * * Within twenty days from the date the issues are raised, either party may move for summary judgment." R.C. 2953.21(F) provides: "At any time before the answer or motion is filed, the petitioner may amend the petition with or without leave or prejudice to the proceedings.  The petitioner may amend the petition with leave of court at any time thereafter."

**{¶ 23}** According to Quinn, the State's Answer is a "nullity" because it was filed late, and as such it cannot serve to block his ability to amend his original petition for post-conviction relief without leave of court. Quinn asserts that he "amended his post-conviction relief on * * * August 3, 2016, with a 25 page amendment/supplement, and August 8, 2016 with exhibits 20, 22, the demand for discovery and an affidavit from Beverly Quinn," well before the court's September 21, 2016 final appealable order. He argues that "these amendments/supplements to his Post Conviction Petition were neither denied nor overruled, but the Appellant feels this Court is owed a proper explanation in regards to the amendments/supplements."

**{¶ 24}** We initially note that the "State is not required to file a response to a post-conviction petition, and the trial court is not required to consider the State's response, if any, before ruling on the petition. * * * Moreover, the time provided in R.C. 2953.21(D) for the State to respond to Defendant's post conviction petition is directory only, not mandatory. * * *." *State v. Kingsolver*, 2d Dist. Greene No. 02CA84, 2003-Ohio-3833, ¶ 9.

**{¶ 25}** Reading R.C. 2953.21(F) in conjunction with R.C. 2953.21(D), we conclude that it was incumbent for Quinn to obtain leave since the State had filed a motion a year and a half before the proposed amendment. We cannot conclude that R.C. 2953.21 contemplated amending an original petition for post-conviction relief without leave of court 18 months after the original petition was filed. Accordingly, we find that the trial court did not err in failing to address Quinn's "Motion Amending Post Conviction Petition" and "Motion to Amend Petition for Post Conviction."

**{¶ 26}** Regarding the trial court's failure to address his original nine claims

individually, we note that in "order to be entitled to post-conviction relief, [Quinn] was required to establish a violation of his constitutional rights that rendered his judgment of conviction void or voidable. R.C. 2953.21; *see also, e.g., State v. Zimpfer*, 2d Dist. Montgomery No. 26857, 2016-Ohio-7330, ¶ 26." *State v. DeVaughns*, 2d Dist. Montgomery No. 27132, 2017-Ohio-475, ¶ 23.

{¶ 27} In *State v. Calhoun*, 86 Ohio St.3d 279, 291, 714 N.E.2d 905 (1999), the Ohio Supreme Court noted that the "court of appeals found that the trial court did not make sufficient findings of fact and conclusions of law because the trial court did not address *every* argument raised by petitioner and allegedly supported by documentary evidence." The Ohio Supreme Court concluded as follows:

This court echoed the language of the statute in *State v. Lester* (1975), 41 Ohio St.2d 51, 70 O.O.2d 150, 322 N.E.2d 656, paragraph two of the syllabus, where we held that findings of fact and conclusions of law are mandatory under R.C. 2953.21 if the trial court denies the petition. " 'The obvious reasons for requiring findings are " * * * to apprise petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly determine appeals in such a cause." *Jones v. State* (1996), 8 Ohio St.2d 21, 22 [37 O.O.2d 357, 358, 222 N.E.2d 313, 314]. The exercise of findings and conclusions are essential in order to prosecute an appeal. Without them, a petitioner knows no more than [that] he lost and hence is effectively precluded from making a reasoned appeal. In addition, the failure of a trial judge to make the requisite findings prevents any meaningful judicial review, for it is the findings and the conclusions

which an appellate court reviews for error.' " *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330, 1330-1331, quoting *State v. Mapson* (1982), 1 Ohio St.3d 217, 219, 1 OBR 240, 242, 438 N.E.2d 910, 912.

A trial court need not discuss every issue raised by appellant or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion. *State v. Clemmons* (1989), 58 Ohio App.3d 45, 46, 568 N.E.2d 705, 760-707, citing 5A Moore, Federal Practice (2 Ed. 1990), 52-142, Section 52.06[1].

Thus, we hold that a trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence.

*Calhoun*, at 291-92.

{¶ 28} The trial court's findings of fact make clear that the court credited Beverly's testimony regarding what happened to her when the offenses occurred, and that Quinn committed the offenses. The court specifically found that Beverly reported to the police and hospital personnel that the injuries she sustained were caused by her son, James Quinn, consistent with her trial testimony. However, the court further found that Beverly's

"testimony was clearly supported by the surveillance video from Wal-Mart." In affirming the denial of Quinn's motion for a new trial, almost three months before the trial court initially issued its findings of fact and conclusions of law, this Court noted as follows regarding the credibility of Beverly's testimony at trial and the Wal-Mart video:

> In the case before us, the trial court, without holding a hearing, determined that the trial testimony of the victim was more credible than the statements she made in the post-trial affidavits. The trial court relied on the fact that the same witness had recanted testimony at previous hearings, but did not specify what hearings, the nature of the testimony or how the recantation affected the outcome. If the trial court was deciding credibility based on Beverly's testimony in other cases, a different proceeding other than the trial, or on the witness's reputation for truthfulness, then an abuse of discretion occurred as a result of the trial court's consideration of matters outside of the record in this case. However, we fail to see how Beverly's lack of credibility in the past would lead to a conclusion that her testimony at trial was more credible than the post-trial affidavit.

> To determine which of the contradictory testimonies of a recanting witness is credible and true, a trial court must be able to point to evidentiary support in the record for its conclusion. In most cases where a motion for a new trial is based on recanted testimony of the State's primary witness, it will be necessary for the trial court to conduct a hearing to weigh the credibility of the testimony. * * * In other cases, a trial court can rule on the motion for a new trial, without a hearing, when the affidavit appears

"insufficient on its face," especially when viewed "in light of physical and medical evidence produced at trial and the circumstances surrounding the case and the alleged recantation." *State v. McConnell*, 2d Dist. Montgomery No. 24315, 2011-Ohio-5555, ¶ 19. * * *

In the case before us, the trial court determined that the recanted testimony would not affect the outcome of the trial because evidence of Quinn's guilt was established by the admission of the surveillance video. We disagree. The record establishes that no testimony was given from anyone to identify Quinn as the person in the video who made contact with Beverly and the Walmart employee. On both direct and cross-examination, the Walmart employee who talked with Beverly in the parking lot, could not identify Quinn as the person who approached him and Beverly and whom he asked to leave, as depicted in the video. Also contrary to the trial court's finding, the record contains no testimony from anyone who positively identified the car in the video as the defendant's car. Actually, the only testimony at trial regarding what car Quinn was driving was from Beverly, who said he was driving her tan sedan, not a white station wagon as depicted in the video. We have viewed the video, which does not reveal a clear or close enough view of the person's face to match it with Quinn. The video does not independently provide sufficient evidence to convict Quinn of any of the charged offenses.

*Quinn* II, 2016-Ohio-140, ¶ 16-18.

**{¶ 29}** This Court further determined however, that "the record does contain

sufficient support for finding that Beverly's testimony at trial was more credible than her post-trial affidavits." *Id.*, ¶ 19. This is because an "officer testified that Beverly identified her son as the person who attacked her in her home. A detective testified that Beverly identified her son as the person who forced her into a car, threatened to harm her, and hit her face, causing visible injuries. The Walmart employee also testified that Beverly told him her son was trying to hurt her." *Id.* Finally, the emergency room nurse testified that Beverly identified her son as the person who caused her injuries. *Id.* This Court concluded as follows: "Based on the lack of Beverly's credibility in her affidavits, and the strength of her credibility at trial, as supported by the testimony of numerous witnesses, we conclude that even if the jury was presented with the new evidence there is not a strong probability that the outcome would be different." *Id.*, ¶ 21.

{¶ 30} Thus, we find that the trial court's findings of fact and conclusions of law, although not addressed to each of Quinn's individual nine claims in his petition, sufficiently apprised Quinn of the basis for the court's disposition to enable meaningful review, namely that he failed to set forth sufficient operative facts to establish substantive grounds for relief due to the strength of Beverly's credibility at trial. Further, as discussed in detail below, the affidavits attached to Quinn's petition appear insufficient on their face to establish substantive grounds for post-conviction relief. Accordingly, Quinn's first assignment of error is overruled.

{¶ 31} Quinn's remaining assignments of error are as follows:

The Appellant was prejudiced in four (4) ways by the fact that law enforcement reports were not disclosed to defense. (a discovery violation) this resulted in errors that affected the jury selection process. This is a

prejudicial violation of due process (this error is drawn from claim one c).

And,

There were three (really four revealed in a subsequent error) Clark County Sheriff reports that were not disclosed to the defense would have provided a means to retrieve the exculpatory evidence in the car that the state claims was used in the crimes for which the appellant is incarcerated violating the appellant's due process and the right to a fair trial (this assignment of error is drawn from claim one (a) and claim one (b) from the amended post conviction petition and claim one in the original post conviction petition)

And,

The state failed to disclose law enforcement reports that were in themselves favorable. This impaired the appellants right to access to evidence (this drawn from claim one (1)(a)).

And,

The state failed to preserve the car the state claims was used in the crimes for which the appellant is incarcerated. The state failed to let the defense know of the destruction of the car prior to trial. The destruction of the car is exculpatory evidence. [T]his is a violation of Due process and a Brady violation. (this is drawn from claim one d).

And,

The state failed to disclose impeachment information. This in violation of Brady, the due process of law, right to a fair trial. (this is drawn

from claim ten (10) and fifteen (15) of the amended petition).

And,

The appellant was not given effective assistance of counsel violating his sixth amendment right (this is drawn from claim three (a) from the amended petition and claims 3, 7, and 8 from the original petition).

And,

The state withheld another sheriff report that is evidenced by the nurses notes from the hospital. This is a Brady violation which affected the appellant['s] due process rights and the right to a fair trial (this drawn from claim 11 of the amended post conviction petition).

And,

The Appellant's peremptory challenges were reduced by one due to the state not disclosing the uniform incident report that Deputy [******] authored. (This drawn from Claim One (C)). This is a prejudicial violation of due process.

And,

The Appellant was denied an opportunity to keep Deputy [******] on the jury and pursue his Sixth Amendment right to an impartial jury and his right to a fair trial.

{¶ 32} We initially note that the majority of Quinn's assigned errors are based upon information contained in his amended petition that is not properly before us, as determined above. Assigned errors two, four, five and nine indicate that they are based upon the supplemental information amended to claim one. Assigned error six indicates

that it is based upon claims 10 and 15 of the amended petition, assigned error eight indicates that it is based upon claim 11 of the amended petition, and assigned error ten is clearly based upon the amended petition, because the deputy referenced in the assignment is not mentioned in Quinn's original petition. As we have previously noted, " '[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants.' *Yocum v. Means,* Darke App. No. 1576, 2002-Ohio-3803." *State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784, ¶ 9. As we noted above, the trial court was not required to consider Quinn's amended petition, thus his supplemental arguments necessarily fail.

{¶ 33} Assigned errors three and seven are the only assigned errors that refer to Quinn's original petition. Assigned error three refers in part to claim 1, namely the State's alleged failure to disclose the allegedly exculpatory evidence in the car, and assigned error seven refers to Quinn's claims of ineffective assistance of defense counsel in claims 3, 7, and 8.

{¶ 34} We will first address Quinn's seventh assigned error. Quinn asserts that defense counsel "was asked to do five * * * things prior to trial," namely "investigate the house where the crimes were to have occurred," "investigate the car that the alleged crimes happened in," "investigate the bridge the Appellant supposedly took his Mother to throw her from," "speak to Mike Simms to see if he had information," and "speak to Mark Rafferty to see if had information." Quinn asserted that if Caleb Hilt had been interviewed, "the Appellant would not be here. Brett Rinehart was ineffective." Quinn asserts that it "cannot be said that a complete and total failure to conduct any pre-trial investigation or to interview a single witness is a reasonable choice when defending a

defendant who protests his innocence."

**{¶ 35}** As this Court further noted in *Goldwire*, ¶ 9-11:

"The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment." *State v. Monroe,* Franklin App. No. 04AP-658, 2005-Ohio-5242. R.C. 2953.21 allows "[a]ny person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the conviction void or voidable under the Ohio Constitution or the United States Constitution" to petition the trial court to vacate or set aside his sentence. "[I]n order to succeed on such a petition, the petitioner must show that a constitutional violation occurred at the time of his trial and conviction." *State v. Hill,* Greene App. No. 2004 CA 79, 2005-Ohio 3176. It is the petitioner's burden to submit "evidentiary documents with sufficient facts to demonstrate a constitutional deprivation, such as ineffective assistance of counsel." Id. (Internal citations omitted.) "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." Id. "When the evidence a defendant relies upon [is] dehors the record that evidence must meet a threshold of cogency." Id. "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " Id.

"Rather than grant a hearing on the petition, the trial court must

determine from an analysis of the petition and its supporting affidavits whether substantive grounds for the relief are present, meriting a hearing." Id. "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *State v. Coleman,* Clark App. Nos. 04CA43, 04CA44, 2005-Ohio-3874. "A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review." Id. "In reviewing petitions for post-conviction relief, a trial court may, in the exercise of its sound discretion, weigh the credibility of affidavits submitted in support of the petition in determining whether to accept the affidavit as true statements of fact." Id.

"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe,* Franklin App. No. 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104.

"Our statutes do not contemplate relitigation of those claims in post conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." Id. "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge* (1997), [120] Ohio App.3d 122, 151, 697 N.E.2d 228. "Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *Monroe.*

**{¶ 36}** Quinn's brief suggests that he directed defense counsel to investigate the house, the car, the bridge, and to speak to Simms and Raferty *before trial.* However, it is not clear and Quinn does not establish by an admissible affidavit or any documentary evidence how Simms' or Raferty's testimony would have aided his defense. We note that Quinn did assert on direct appeal that defense counsel provided ineffective assistance in failing to interview Hilt, and that argument is barred by res judicata. *Quinn I*, 2016-Ohio-139, ¶ 38.

**{¶ 37}** Regarding Quinn's first claim about the allegedly exculpatory evidence in the car, we conclude that his claim is merely speculative. "An affidavit is a written declaration under oath * * *." R.C. 2319.02. "A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238, 657 N.E.2d 1345 (1992). Quinn's petition is not supported

by any affidavit by him, but only by his statements in support of the petition, which are legally insufficient to establish operative facts. Beverly failed to confirm her statement by oath or affirmation, and it is accordingly not an affidavit and of no effect. Peterson's affidavit does not establish that exculpatory items were in the car or that the State withheld them from Quinn. Finally, we note that the only other affidavit attached to Quinn's petition, the Savage affidavit, which purports to provide an alibi for Quinn's whereabouts at the time of the offenses, does not state the precise date that he avers he observed Quinn sleeping on Raferty's couch. For the foregoing reasons, Quinn's remaining assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
James E. Quinn
Hon. Douglas M. Rastatter