[Cite as *State v. Taylor*, 2021-Ohio-1670.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2019-CA-77 and |
| | : | 2020-CA-6 |
| v. | : | |
| | : | Trial Court Case No. 2017-CR-566 |
| PIERRE TAYLOR | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of May, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

BRIAN A. MUENCHENBACH, Atty. Reg. No. 0088722, 40 North Main Street, Suite 1900, Kettering, Ohio 45423
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Defendant-Appellant Pierre Taylor appeals from judgments of the Greene County Court of Common Pleas, which denied his petitions for postconviction relief, his motion for a new trial, and related motions. Taylor's appointed counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he can find no non-frivolous issues for appeal. Upon our independent review, we agree with counsel's assessment. For the following reasons, the trial court's judgments will be affirmed.

## I. Factual and Procedural History

**{¶ 2}** We detailed the facts underlying Taylor's conviction in his direct appeal, *State v. Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142, and we summarize them here.

**{¶ 3}** On September 26, 2017, Taylor's ex-wife, C.T., lived at the Fairborn Apartments on Wallace Drive with her four children, including B.W., who was 16 years old at the time of trial. Nineteen-year-old C.B., who C.T. "took in * * * after she got out of foster care," also lived there. Taylor lived nearby on the same street.

**{¶ 4}** According to C.B., she and B.W. were walking around the apartment complex when they saw Taylor arguing with some men on Williams Street. Taylor began calling C.B. and B.W. names and threw a bottle at them. During the encounter, Taylor pushed B.W. to the ground and put his hand around C.B.'s throat. C.B. and B.W. ran home and called for C.T. Taylor followed them home.

**{¶ 5}** C.T. heard Taylor yelling, and she went outside to talk to him. C.T. testified at trial that Taylor began yelling at her, and that her fiancé, Dwayne Ellington, then came outside from the apartment to try to calm Taylor down. When C.T. and Ellington returned

to the apartment, Taylor followed and put his foot in the doorway so C.T. could not close the door.   As C.T. walked toward the bedrooms, Taylor pushed the door open and entered.   While in the apartment, Taylor tried to fight Ellington and threatened to kill everyone.   Taylor said that he was going to get his gun.   C.T. saw Taylor with an open knife, and she tried to talk him into leaving the apartment.   C.B. tried, unsuccessfully, to get the knife away from Taylor, and she sustained a cut to her arm in the process.

{¶ 6} Taylor and C.T. eventually exited the apartment, and C.T. testified that Taylor left and did not return.   However, a friend of B.W.'s testified that she saw Taylor drop a gun in the grass at the apartment complex, pick it up, and keep walking.   At trial, Taylor stipulated that he had two prior convictions in Xenia Municipal Court for domestic violence.

{¶ 7} At 7:12 p.m., Fairborn police officers were dispatched to C.T.'s apartment on a report that Taylor was fighting with the occupants and had a knife.   While en route, the officers learned that Taylor had left the apartment to retrieve a gun.   Soon thereafter, the police received another report that Taylor had discharged a weapon at the end of Williams Street near Baker Junior High School.

{¶ 8} Officers headed to the location where the gun reportedly had been fired, but they did not locate Taylor there.   They then proceeded to Taylor's residence, where they found him.   Officers handcuffed him and conducted a pat down for officer safety.   Taylor indicated that he had a knife in his pocket, which an officer retrieved.   Officers placed Taylor in a cruiser and later transported him to the police department.   After the police obtained a search warrant for Taylor's residence, officers found a Hi-Point semi-automatic handgun in his home.   Testing revealed that Taylor's DNA was on the gun.

{¶ 9} Officers returned to the Fairborn Apartments and spoke with C.B. and C.T. Based on C.B.'s statements, an officer took photographs of her face, neck, and arms.

{¶ 10} Detective Alan Kraker of the Fairborn Police Department located a shell casing from a sidewalk across from 335 Williams Street, where Taylor reportedly fired his weapon. It was determined that the casing had been fired from Taylor's Hi-Point firearm.

{¶ 11} On October 9, 2017, Taylor was charged in a seven-count indictment with aggravated burglary (with purpose to commit domestic violence against C.T.), two counts of carrying a concealed weapon (knife and handgun), two counts of domestic violence (C.T. and B.W.), aggravated menacing (C.B.), and assault (C.B.). The indictment also contained a forfeiture specification for the Hi-Point handgun. Taylor moved to suppress evidence obtained from his residence, alleging that officers unlawfully entered his residence prior to obtaining a search warrant and that the search warrant was based, in part, on false information in the affidavit. After a hearing, the trial court overruled the motion.

{¶ 12} The matter proceeded to a two-day jury trial beginning on February 20, 2018. At the close of the State's case, the trial court granted Taylor's Crim.R. 29 motion for an acquittal on Count 3 (carrying a concealed weapon: handgun), but denied the motion as to all other counts. After deliberating, the jury found Taylor guilty of the remaining charges and the forfeiture specification.

{¶ 13} On February 27, 2018, prior to sentencing, Taylor, pro se, filed a motion for a new trial pursuant to Crim.R. 33(A). He raised the following claims: (1) the trial court erroneously admitted prejudicial evidence, (2) the trial court excluded evidence that was favorable to him, (3) the prosecutor withheld exculpatory evidence, in violation of *Brady*

*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), (4) the prosecutor tampered with witnesses, (5) C.T. gave contradictory testimony at trial, (6) trial counsel rendered ineffective assistance, and (7) he had newly discovered evidence that he did not enter the residence or have a handgun at the residence. Taylor did not identify what the newly discovered evidence was.

{¶ 14} On March 2, 2018, Taylor's counsel also filed a motion to set aside the verdict or for a new trial, claiming that the State violated *Brady* by withholding a recorded January 5, 2018 telephone conversation between Taylor and C.T. The State opposed the motion, asserting that no *Brady* violation had occurred. It argued that the contents of the call were not exculpatory, that Taylor made the call and was aware of what was said, and that Taylor had the opportunity to cross-examine C.T. about their contacts at trial. The trial court did not resolve the motions prior to sentencing.

{¶ 15} At the sentencing hearing held on March 9, 2018, the trial court imposed an aggregate sentence of nine years in prison. On March 12, 2018, Taylor renewed his pro se motion for a new trial, raising the same issues as in his prior pro se motion. The following day, Taylor appealed from his conviction. The transcripts of a December 20, 2017 hearing, the suppression hearing, the trial, and sentencing were filed in his direct appeal on March 26, 2018. On August 8, 2018, an additional transcript of a hearing on another pretrial motion (original defense counsel's motion to withdraw) was filed.

{¶ 16} On March 27, 2018, the trial court overruled both pro se motions on the ground that Taylor was represented by counsel and could not simultaneously represent himself. The court also overruled counsel's March 2 motion, finding that Taylor had been aware of the contents of the phone call and had had ample opportunity to cross-

examination C.T. at trial. Taylor did not appeal the trial court's ruling.

{¶ 17} In January 2019, we affirmed Taylor's conviction. *Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142. In doing so, we overruled assignments of error related to the constitutionality of the domestic violence statute, the playing of the 911 call, Taylor's recorded conversation with C.T., jury instructions regarding consciousness of guilt, prosecutorial misconduct, denial of his right to confront B.W. (who did not testify), the manifest weight of the evidence, the forfeiture of the firearm, and his right to a speedy trial. Taylor filed an application to reopen his direct appeal, which we denied. He then sought reconsideration of that decision, which we also denied.

{¶ 18} Following the affirmance of his conviction, Taylor filed numerous pro se motions, including (1) Petition to Vacate or Set Aside Judgment of Conviction or Sentence (8/23/2019); (2) Motion for Appointment of Counsel (8/23/2019); (3) Motion for Disclosure of Exculpatory Evidence/*Brady* Material (9/13/2019); (4) Motion to Supplement Petition to Vacate or Set Aside Judgment of Conviction or Sentence (9/20/2019); (5) Motion for Issuance of Subpoenas (10/21/2019); (6) Motion for New Trial Due to Newly Discovered Evidence (10/21/2019); (7) Motion to Amend Motion for New Trial and Motion for Issuance of Subpoenas (11/12/2019); and (8) Motion for Leave to File Delayed Motion for New Trial (11/14/2019).

{¶ 19} Taylor's initial petition for postconviction relief, filed August 23, 2019, raised two claims. First, he asserted that the State had withheld *Brady* evidence, namely the recordings of two phone calls between C.T. and him from January 2018, during which C.T. allegedly admitted that Taylor did not enter her apartment. Second, he claimed that Detective Kraker knowingly and intentionally used false statements in his affidavit in

support of the search warrant for Taylor's apartment. Taylor emphasized that certain statements in the search warrant affidavit were contradicted by the detective's and C.T.'s testimony at trial. (Taylor appears to believe that Detective Kraker prepared the search warrant affidavit, but the record indicates that Detective Kraker provided information to Detective Shane Hartwell, who prepared the affidavit.)

{¶ 20} Taylor's supplemental petition, filed on September 20, 2019, clarified his two claims and added four additional claims. He again raised that the State had withheld two phone calls between Taylor and C.T.; Taylor stated that one of those calls was a three-person call also involving Rhonda Hoskins. Taylor reiterated that Detective Kraker's testimony at trial differed from statements in the search warrant affidavit and that C.T.'s testimony at trial contradicted her other sworn statements about the incident.

{¶ 21} Taylor's new claims consisted of: (1) his trial counsel rendered ineffective assistance, (2) the prosecutor engaged in misconduct by providing a misleading bill of particulars and misrepresenting the facts in her opening statement at trial, (3) the search of his apartment violated the Fourth Amendment due to untrue statements in the search warrant affidavit, and (4) the State perpetrated a fraud on the court by using perjured testimony at trial and untrue statements in the search warrant affidavit.

{¶ 22} Taylor supported his petitions for postconviction relief with several documents: (1) Detective Kraker's probable cause statement in support of the initial criminal complaint against Taylor in Fairborn Municipal Court, (2) an affidavit from Rhonda Hoskins, dated July 19, 2018, in which Hoskins stated, among other things, that C.T. told her that she (C.T.) had lied during her testimony, (3) the search warrant affidavit, prepared by Detective Hartwell, and (4) C.T.'s petition for a domestic violence civil protection order

against Taylor, filed in the domestic relations court on September 27, 2017 (the day after the incident).

{¶ 23} Taylor sought the appointment of counsel so that he could have assistance with obtaining evidence from the State. He separately requested the disclosure of "exculpatory evidence/*Brady* material," enumerating 15 categories of evidence. He also moved for the issuance of subpoenas to the jail, sheriff's office, and prison warden, seeking recordings of certain recorded phone calls and certified transcripts of those recordings.

{¶ 24} In addition, Taylor filed a motion for a new trial based on newly discovered evidence, pursuant to Crim.R. 33, and a motion for leave to file a delayed motion for a new trial. Taylor identified the newly discovered evidence as a phone call with Kendra Lane, who allegedly stated that she had witnessed the events of September 26, 2017, and that Taylor had not entered C.T.'s apartment. Taylor also indicated that a witness, Samantha Taylor, spoke with C.T. prior to trial and told C.T. that he (Taylor) never went into C.T.'s apartment. Taylor again asserted that C.T. made statements to Rhonda Hoskins, some of which were recorded during a three-way telephone call with Taylor from the prison, and that C.T. had lied at trial and made other statements that undermined her credibility. Finally, Taylor attached electronic messages between C.T. and him, and argued that they demonstrated that C.T. had lied on the stand and was pressured by the prosecutor to testify. Taylor's amended motion for a new trial corrected the date of his phone call with Lane and the date he received copies of the electronic messages.

{¶ 25} The trial court overruled Taylor's petitions and motions on December 10, 2019. It concluded that the petitions for postconviction relief were untimely, and the

related motions were moot. As to Taylor's motion for a new trial, the trial court concluded that Taylor had failed to establish that he could not have learned of the alleged newly discovered information within the 120-day time limit. The court reasoned that there was "no evidence that Kendra Lane's presence at the scene was new information to Taylor." The court further stated that Lane's testimony "would merely impeach or contradict the evidence adduced at trial," and thus even if the evidence were considered to be newly discovered, he still would not be entitled to a new trial based on newly discovered evidence. Taylor appeals from the trial court's judgment (Case No. 2019-CA-77).

{¶ 26} On December 6, 2019, Taylor filed a Motion to Vacate a Void Judgment. In that motion, Taylor again argued that the prosecutor knowingly and intentionally used perjured testimony, which violated his right to due process and resulted in a void judgment. In a separate judgment entry, the trial court construed Taylor's December 6, 2019 motion as a petition for postconviction relief and overruled it as untimely. Taylor also appeals this judgment (Case No. 2020-CA-6).

{¶ 27} After the appeals were filed, Taylor filed a motion for appointment of counsel in each case. Prior to our ruling on the motions, the parties filed their appellate briefs in both cases. We granted Taylor's motion for the appointment of counsel in Case No. 2019-CA-77 and, on March 9, 2020, we sua sponte consolidated Taylor's two appeals. Consistent with that entry, we appointed counsel to represent Taylor in both appeals and struck the previously-filed briefs.

{¶ 28} Taylor's appellate counsel has filed an *Anders* brief, stating that he could find no non-frivolous issues for appeal and requesting permission to withdraw. Counsel raised three potential assignments of error: (1) whether the trial court abused its discretion

in denying Taylor's petition for postconviction relief without a hearing, (2) whether the trial court erred in denying the motion for disclosure of exculpatory evidence without a hearing and without making specific findings of fact, and (3) whether the trial court erred in denying Taylor's motion for a new trial.

{¶ 29} We informed Taylor that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. Taylor has filed a pro se brief in Case No. 2019-CA-77, raising two claims. He asserts that the trial court erred in denying his petition to vacate or set aside his conviction without an evidentiary hearing, when the court knew that his conviction was based on perjured testimony and a fraud on the court. He also claims that the trial court erred in denying his motion for new trial, failing to issue subpoenas for phone calls that would have proven that the State withheld exculpatory evidence, and denying his motion for disclosure of exculpatory evidence.

{¶ 30} The appeals are now before us for our independent review.

## II. *Anders* Appeal Standard

{¶ 31} Upon the filing of an *Anders* brief, an appellate court must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). "An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply." *State v. White*, 2d Dist. Montgomery No. 28338, 2020-Ohio-5544, ¶ 14, citing *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v.*

*Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue – whether presented by appellate counsel, presented by the defendant, or found through an independent analysis – is not wholly frivolous, we must reject the *Anders* brief and appoint new appellate counsel to represent the defendant. *White* at ¶ 14, citing *Marbury* at ¶ 7; *State v. Almeyda*, 2d Dist. Montgomery No. 28727, 2021-Ohio-862, ¶ 3.

{¶ 32} In its responsive brief, the State notes that Taylor filed his pro se brief in Case No. 2019-CA-77, but not Case No. 2020-CA-6. We also had noted this failure and, because the cases were consolidated, instructed Taylor to file his pro se brief under both case numbers. Taylor failed to do so. The State now asks that we dismiss Case No. 2020-CA-6 for failure to prosecute.

{¶ 33} After consideration, we conclude that the dismissal of Case No. 2020-CA-6 is not appropriate, despite Taylor's failure to comply with our instruction. Taylor's appointed counsel filed an *Anders* brief for both cases, which requires us to conduct an independent review of the record to determine if non-frivolous issues exist in either case. Taylor was not required to file any pro se brief, and his failure to do so in Case No. 2020-CA-6 does not remove our existing obligation to conduct an *Anders* review in that case. The State's motion to dismiss Case No. 2020-CA-6 is overruled.

### III. Taylor's Petitions for Postconviction Relief

{¶ 34} The trial court overruled three of Taylor's filings – the August 23, 2019 petition, the September 20, 2019 supplemental petition, and the December 6, 2019 motion – as untimely petitions for postconviction relief. Taylor's initial and supplemental petitions expressly stated that he was seeking relief under R.C. 2953.21, the

postconviction relief statute. In contrast, Taylor refers to his December 6, 2019 motion – titled "motion to vacate a void judgment" – as a "common law motion," not a petition under the postconviction relief statute. Upon review, we find no arguable error in the trial court's consideration of all three filings as petitions for postconviction relief.

{¶ 35} We have recognized that the "nature of a motion is not necessarily governed by its title." *State v. Housley*, 2d Dist. Miami No. 2019-CA-12, 2020-Ohio-1143, ¶ 15. "When a motion is filed subsequent to a direct appeal (or the expiration of time for filing a direct appeal), claims the denial of constitutional rights, seeks to render the judgment of conviction void, and asks for vacation of the judgment and sentence, the motion is properly construed as a petition for postconviction relief." *Id.*, citing, *e.g., State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997); *State v. Cline*, 2d Dist. Champaign No. 2013-CA-51, 2014-Ohio-4503, ¶ 7.

{¶ 36} Here, Taylor's motion was filed after his direct appeal and claimed that constitutional errors rendered his conviction void. The motion contained all of the elements of a petition for postconviction relief, and the trial court properly treated it as such. Any claim that the trial court erred in construing his December 6, 2019 motion as a petition for postconviction relief would be frivolous.

**A. Standard for Petitions for Postconviction Relief**

{¶ 37} A petition for postconviction relief "is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 14 (2d Dist.), quoting *State v. Monroe,* 2015-Ohio-844, 29 N.E.3d 391, ¶ 37 (10th Dist.). A

postconviction proceeding is a "civil collateral attack on a criminal judgment," not an appeal from the criminal conviction. *State v. Wells*, 2d Dist. Montgomery No. 22389, 2008-Ohio-4932, ¶ 11, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999).

{¶ 38} When a defendant has pursued a direct appeal of his or her conviction, as Taylor has, a petition for postconviction relief must be filed no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). Trial courts lack jurisdiction to consider an untimely or successive petition for postconviction relief, unless the untimeliness is excused under R.C. 2953.23(A). *State v. Current*, 2d Dist. Champaign No. 2012-CA-33, 2013-Ohio-1921, ¶ 16.

{¶ 39} The untimely filing of a petition for postconviction relief may be excused with a showing that either (1) the defendant was unavoidably prevented from discovering the facts upon which he or she relies to present the claim, or (2) the United States Supreme Court recognizes a new federal or state right that applies retroactively to his or her situation and the petition asserts a claim based on that right. R.C. 2953.23(A)(1)(a). The petitioner also must show by clear and convincing evidence that, if not for the constitutional error from which he or she suffered, no reasonable factfinder would have found the petitioner guilty. R.C. 2953.23(A)(1)(b).

{¶ 40} We review a trial court's denial of a petition for postconviction relief without a hearing for an abuse of discretion. *State v. Clemmons*, 2d Dist. Montgomery No. 28085, 2019-Ohio-2997, ¶ 18; *State v. Harden*, 2d Dist. Montgomery 23617, 2010-Ohio-3343, ¶ 10. An abuse of discretion occurs when the trial court's decision is

unreasonable, arbitrary, or unconscionable. *State v. Turner*, 2d Dist. Montgomery No. 27350, 2017-Ohio-4101, ¶ 5, citing *State v. Jenkins*, 2d Dist. Montgomery No. 27173, 2017-Ohio-1073, ¶ 10.

### B. Petitions for Postconviction Relief in Case No. 2019-CA-77

{¶ 41} Taylor's initial petition for postconviction relief was filed on August 23, 2019, and he supplemented that petition on September 20, 2019. Because Taylor filed a direct appeal, he was required to file his petitions within 365 days of the filing of his "trial transcript" in his direct appeal. At the latest, Taylor's "trial transcript" was filed on August 8, 2018, when the last transcript was filed. *See State v. Deaton*, 2019-Ohio-2128, 137 N.E.3d 696, ¶ 11-15 (2d Dist.) (addressing the meaning of "trial transcript" under R.C. 2953.21(A)(2)). Because Taylor's petitions were filed beyond the 365-day time limit, the trial court correctly determined that Taylor's petitions were untimely.

{¶ 42} Taylor argues that his untimeliness should be excused, because the United States Supreme Court has recognized new federal and state rights that apply to him retroactively. He cites to *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, and *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, for the proposition that a void judgment may be challenged at any time. Taylor contends that his conviction was void due to the use of perjured testimony and multiple instances of fraud on the court and he, therefore, could challenge his conviction at any time.

{¶ 43} We disagree with Taylor that *Fischer* and *Billiter* satisfy the requirements of R.C. 2953.23(A)(1)(a). First, recent Ohio Supreme Court authority indicates that the new federal or state right must be recognized by the United States Supreme Court, not the Supreme Court of Ohio. *See State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137

N.E.3d 1151 (with two justices concurring and two concurring in judgment only).

{¶ 44} Second, neither Ohio Supreme Court case involves the recognition of a new "right." In *Fischer*, the Ohio Supreme Court held that a sentence that did not include the statutorily-mandated term of postrelease control was void, was not precluded from appellate review by principles of res judicata, and may be reviewed at any time, on direct appeal or by collateral attack. *Fischer* at paragraph one of the syllabus. *Fischer* made clear that res judicata applied to other aspects of the judgment of conviction, including the determination of guilt and lawful elements of the sentence. *Id.* at paragraph three of the syllabus. *Billiter* held that "[w]hen a criminal defendant is improperly sentenced to postrelease control, res judicata does not bar the defendant from collaterally attacking his conviction for escape due to an earlier postrelease-control sentencing error." *Billiter* at syllabus.

{¶ 45} Significantly, both *Fischer* and *Billiter* have been overruled by *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. In *Harper*, the Ohio Supreme Court concluded that it would "return to the traditional view of void and voidable judgments." *State v. Florence*, 2d Dist. Montgomery No. 28674, 2021-Ohio-867, ¶ 26 (discussing *Harper*). It held that "[a] sentence is void when a sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Harper* at ¶ 42. Under this standard, Taylor's conviction is not void.

{¶ 46} Taylor further claims that, under United States Supreme Court authority and other federal case law, a conviction based on perjured testimony or fraud is void under the Due Process Clause, and a challenge to the conviction is not barred by res judicata. We have reviewed the cases cited by Taylor. None of the cases supports a conclusion

that Taylor can bypass the procedures set forth in Ohio's postconviction statutes or demonstrate a new "right" within the meaning of R.C. 2953.23(A)(1)(a). In short, Taylor has not demonstrated that the untimeliness of his petitions for postconviction relief is excused under R.C. 2953.23(A)(1)(a).

{¶ 47} Upon review of the record, we further find no non-frivolous argument that Taylor was unavoidably prevented from discovering the facts upon which he relies to present his claims.

{¶ 48} First, as to the recordings of phone calls, Taylor focuses on two calls between C.T. and him that occurred in January 2018. Those phone calls occurred prior to trial, and Taylor acknowledges that he was a participant. Accordingly, Taylor was aware of the content of those calls, and any claim that he was unavoidable prevented from discovering the contents of those calls would be frivolous.

{¶ 49} Second, Taylor claims that Detective Kraker's testimony at trial differed from statements he made in the search warrant affidavit. The search warrant and accompanying affidavit were offered as an exhibit at the February 7, 2018 hearing on Taylor's motion to suppress; Taylor was present and heard Kraker's testimony at trial. Taylor cannot reasonably argue that he was unavoidably prevented from discovering the alleged discrepancies.

{¶ 50} The same is true regarding discrepancies between C.T.'s trial testimony and her other sworn statements about the incident. C.T. filed her petition for a domestic violence civil protection order September 27, 2017, the day after the incident and several months prior to trial in this case. The record reflects that Taylor was served with C.T.'s petition at the Fairborn Jail on the same date. Taylor heard C.T.'s testimony at trial, and

thus he was not unavoidably prevented from learning of discrepancies between that testimony and her petition for a domestic violence civil protection order. Taylor also relied on an affidavit from Rhonda Hoskins in which Hoskins stated, among other things, that C.T. told her that she (C.T.) had lied at trial. Hoskins's affidavit was dated July 19, 2018, and well within the 365-day time limit for Taylor to file a timely petition for postconviction relief.

{¶ 51} Taylor's supplemental petition for postconviction relief further claimed that his trial counsel rendered ineffective assistance by failing to properly prepare for trial and to take certain actions at trial. Taylor also claimed that the prosecutor engaged in misconduct in providing a misleading bill of particulars and misrepresenting the facts in her opening statement at trial. In each instance, Taylor would have been aware of the alleged improper conduct by the conclusion of his trial. He cannot reasonably argue that he was unavoidably preventing from learning of these alleged facts. Taylor's claims that the search of his apartment violated the Fourth Amendment due to untrue statements in the search warrant affidavit and that the State perpetrated a fraud on the court similarly were based on evidence available prior to and at trial. With the record before us, any claim that Taylor was unavoidably prevented from discovering the facts underlying his petitions for postconviction relief would be frivolous.

{¶ 52} Accordingly, we find no non-frivolous claim that the trial court erred in denying his initial and supplemental petitions for postconviction relief as untimely. Consequently, the trial court lacked authority to consider the merits of his petitions. Any claim that the trial court erred in failing to issue findings of fact and conclusions of law or to hold a hearing on the petitions also would be frivolous. *See State ex rel. George v.*

*Burnside*, 118 Ohio St.3d 406, 2008-Ohio-2702, 889 N.E.2d 533, ¶ 6 (court had no duty to issue findings of fact and conclusions of law on successive or untimely petitions for postconviction relief); *State v. Kilbarger*, 2d Dist. Montgomery No. 26284, 2015-Ohio-2177, ¶ 10 ("Because Kilbarger's petition was untimely, the trial court did not err when it denied it without holding a hearing.").

### C. Petition for Postconviction Relief in Case No. 2020-CA-6

{¶ 53} Taylor's motion to vacate a void judgment was filed on December 6, 2019, more than 365 days after the trial transcripts were filed in his direct appeal.   Accordingly, the trial court correctly concluded that his motion/petition was untimely.

{¶ 54} Again, Taylor has not provided any basis to excuse his untimeliness, other than to argue that his conviction is void.   He did not argue either (1) that he was unavoidably prevented from discovering the facts upon which he relies to present the claim or (2) that the United States Supreme Court has recognized a new federal or state right that applies retroactively to his situation and the petition asserts a claim based on that right.   Moreover, the record does not support a contention that Taylor was unavoidably prevented from learning the facts upon which he relied in this petition.   We therefore conclude that any claim that the trial court erred in denying the December 6, 2019 motion as an untimely petition for postconviction relief would be frivolous.

### IV. Motion for a New Trial

{¶ 55} As part of Case No. 2019-CA-77, Taylor appeals from the denial of his motion for a new trial based on newly discovered evidence.

{¶ 56} Motions for a new trial are governed by Crim.R. 33.   A new trial may be granted if any of several grounds exist that materially affected the defendant's substantial

rights, including (1) "irregularity in the proceedings * * * because of which the defendant was prevented from having a fair trial," (2) misconduct of the jury, (3) accident or surprise which ordinary prudence could not have guarded against, (4) the verdict is not sustained by sufficient evidence or is contrary to law, (5) error of law occurring at trial, and (6) newly discovered evidence.   Crim.R. 33(A).

{¶ 57} Under Crim.R. 33(B), a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict.   Crim.R. 33(B).   If, as here, the 120-day time period has expired, the defendant must first seek leave of the trial court to file a delayed motion for a new trial.   *State v. Harwell*, 2d Dist. Montgomery No. 28104, 2019-Ohio-643, ¶ 16.

{¶ 58} "To obtain leave, defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B)." (Citations omitted.)   *Id.*, quoting *State v. Warwick*, 2d Dist. Champaign No. 01CA33, 2002 WL 1585663, *2 (July 19, 2002).   "The reference to 'clear and convincing proof' means something more than bare allegations or statements in a motion."   *State v. Morris*, 2d Dist. Montgomery No. 26949, 2017-Ohio-1196, ¶ 19.   "A defendant is entitled to a hearing on a motion for leave to seek a new trial if he [or she] submits documents that on their face support his [or her] claim of being unavoidably prevented from meeting Crim.R. 33's time requirement."   *State v. Hiler*, 2d Dist. Montgomery No. 27364, 2017-Ohio-7636, ¶ 12, citing *State v. Lanier*, 2d Dist. Clark No. 2009-CA-84, 2010-Ohio-2921, ¶ 16.

{¶ 59} " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial

and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984); *State v. Reed*, 2d Dist. Montgomery No. 28272, 2019-Ohio-3295, ¶ 30.   "Conversely, a defendant fails to demonstrate that he or she was unavoidably prevented from discovering the new evidence or the basis of the claim when he or she would have discovered that information earlier with due diligence and some effort."   *State v. Smith*, 2d Dist. Montgomery No. 28307, 2019-Ohio-3591, ¶ 11.

{¶ 60} We review the trial court's denial of leave to file a motion for a new trial for an abuse of discretion.   *Smith* at ¶ 13; *State v. Devaughns*, 2d Dist. Montgomery No. 25826, 2015-Ohio-452, ¶ 15.

{¶ 61} Taylor filed his motion for new trial on October 21, 2019, and his amended motion on November 12, 2019, more than 120 days after the verdict.   Accordingly, Taylor was required to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the new information.

{¶ 62} Taylor's motion indicated that he made a telephone call from Chillicothe Correctional Facility on September 10, 2019, and spoke with Kendra Lane.   During that conversation, Lane allegedly admitted to being a witness to the September 26, 2017 incident and stated that Taylor did not enter C.T.'s residence.   Taylor's motion focused on the phone call, not the content of the conversation, as the new evidence.   He did not indicate whether he knew Lane when the incident occurred or when he became aware that Lane was present at C.T.'s apartment.   Taylor provided no explanation as to why he

could not have discovered earlier, with reasonable diligence, that Lane was present at C.T.'s apartment on September 26, 2017, and what she saw.

{¶ 63} Taylor's motion also referenced another witness, Samantha Taylor, who allegedly spoke with C.T. prior to trial and told C.T. that Taylor had not entered C.T.'s apartment. Taylor provided no additional information about Samantha Taylor. Taylor provided no basis to conclude that Samantha Taylor's information was new evidence to him.

{¶ 64} Taylor further indicated that he and C.T. exchanged "J pay" electronic messages. Taylor asserted that the messages reflected that C.T. was coerced to testify and had lied on the stand. Taylor's description of the messages is not entirely accurate.

{¶ 65} In the first message, dated July 26, 2019, Taylor wrote to C.T. that he never "stepped foot" into C.T.'s apartment and he implored C.T. to "tell the truth." C.T. responded on August 4 that she tried hard not to testify and had told the prosecutor that she did not want to testify. C.T. wrote that the victim advocate and detective brought her to court. C.T. said that Taylor was drunk that day, and she expressed regret that he was in prison; she wrote that she told the prosecutor that he needed help. C.T. stated that she did not realize that Taylor had come to her apartment because he believed that C.T. was being abused by her fiancé. However, C.T. did not, as Taylor asserts, admit to lying on the stand. The additional three messages were from Taylor to C.T., claiming that he did not enter her apartment and that he was convicted on a lie. Taylor asked C.T. to write an affidavit that he did not enter her apartment. While the messages themselves were exchanged in July and August 2019, there is nothing to suggest that C.T.'s message contained new information to Taylor. Even if it did, the content of C.T.'s message was

not sufficient to create a strong probability of a different outcome at trial. *See State v. Quinn*, 2d Dist. Clark No. 2017-CA-102, 2018-Ohio-5279, ¶ 19-21.

{¶ 66} Taylor's claim that the trial court erred in denying his motion for a new trial lacks arguable merit.

## V. Additional Postconviction Motions

{¶ 67} In his pro se brief, Taylor claims that the trial court erred in denying his request for the issuance of subpoenas and for the disclosure of exculpatory evidence/*Brady* material. Appellate counsel also raises as a potential assignment of error that the trial court erred in denying Taylor's motion for exculpatory evidence/*Brady* material.

{¶ 68} It is well established that there is no right to discovery in postconviction proceedings in non-capital cases. *E.g., State v. Hazel*, 2d Dist. Clark No. 2018-CA-39, 2018-Ohio-5274, ¶ 16; *State v. Owensby*, 2d Dist. Montgomery No. 27607, 2018-Ohio-2967, ¶ 26, citing *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 718 N.E.2d 426 (1999). We have specifically rejected the argument that the postconviction process is inadequate and does not comport with due process because it does not grant a petitioner the right to conduct discovery to acquire the evidence needed to support his or her claim for postconviction relief. *Owensby* at ¶ 19-21. In this case, we find no arguably meritorious claim that the trial court erred in denying Taylor's motions for exculpatory evidence and to issue subpoenas related to that evidence, particularly given that Taylor's petitions for postconviction relief were properly dismissed as untimely.

## VI. Conclusion

{¶ 69} We have reviewed the potential assignments of error raised by Taylor and

his appellate counsel and have performed our duty under *Anders* to conduct an independent review of the record. After a thorough review, we have found no issues with arguable merit for Taylor to advance on appeal. Accordingly, appellate counsel's motion to withdraw is granted. The trial court's judgments will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and DONOVAN, J., concur.


Copies sent to:

Marcy A. Vonderwell
Brian A. Muenchenbach
Pierre Taylor
Successor to Hon. Stephen Wolaver