[Cite as *State v. Marcum*, 2023-Ohio-4058.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29823 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 01947 |
| | : | |
| JOSHUA MARCUM | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 9, 2023

. . . . . . . . . . .

JOSHUA MARCUM, Pro Se Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Joshua Marcum, pro se, appeals from the trial court's denial of his petition for postconviction relief. He claims that the trial court erred in determining that his petition was untimely, in permitting the State to file an untimely response, and in rejecting his *Brady* claim without a hearing. For the following reasons, the trial court's judgment

will be affirmed.

## I. Facts and Procedural History

{¶ 2} We previously detailed the evidence presented at Marcum's jury trial. *See State v. Marcum*, 2022-Ohio-3576, 198 N.E.3d 599, ¶ 3-27 (2d Dist.). To summarize, on June 11, 2021, Marcum and the complainant, to whom we referred as Jane Doe in Marcum's direct appeal, met through the Facebook dating app. That day, they exchanged several messages and had two video chats. According to Doe, she invited Marcum to her residence in Fairfield, Ohio, and he arrived around midnight. Doe was already tipsy. When Marcum stated he needed to buy something to drink, Doe suggested a nearby gas station and accompanied him there. While at the gas station, Marcum slipped methamphetamine into a bottle of Smirnoff and handed it to Doe. Doe testified that everything became foggy for her soon after. Marcum transported Doe to a residence in Trotwood where, in a partially-furnished detached garage, he tied her hands and raped her vaginally, anally, and orally.

{¶ 3} Testifying on his own behalf, Marcum stated that he and Doe had made plans to go to his place in Trotwood while they were video chatting. He asserted that Doe ingested the methamphetamine voluntarily during sex, and that they engaged in vaginal, anal, and oral sex consensually. Marcum denied kidnapping or raping Doe or forcing her to do anything.

{¶ 4} In October 2021, a jury found Marcum guilty of two counts of rape (substantially impaired victim), both first-degree felonies, and one count of gross sexual imposition (substantially impaired victim), a third-degree felony. It acquitted Marcum of

two additional counts of rape (force or threat of force), one additional count of gross sexual imposition (force or threat of force) and three counts of kidnapping. At sentencing, the trial court imposed two consecutive prison sentences of a minimum of 10 years and a maximum of 15 years for the rapes and a 60-month prison for gross sexual imposition, to be served consecutively to the rape sentences. Marcum was designated a Tier III sex offender for the rapes and a Tier I sex offender for the gross sexual imposition.

{¶ 5} Marcum appealed from his convictions, claiming that he was denied a fair trial and received ineffective assistance of counsel when his trial counsel failed to object to the testimony of a firefighter/paramedic, who commented on Doe's veracity, and to the State's reference to this testimony in its closing statement. Upon review, we affirmed Marcum's convictions. *Marcum*, 2022-Ohio-3576, 198 N.E.3d 599. Marcum also filed an application for reopening, seeking to challenge his convictions based on the sufficiency and manifest weight of the evidence. We denied that application as well. Order (Feb. 23, 2023). The Ohio Supreme Court declined to accept his appeals from our rulings. *State v. Marcum*, 170 Ohio St.3d 1419, 2023-Ohio-1507, 208 N.E.3d 851 (direct appeal); *State v. Marcum*, 170 Ohio St.3d 1442, 2023-Ohio-1830, 210 N.E.3d 551 (Table) (reopening).

{¶ 6} On January 23, 2023, Marcum filed a "petition to vacate or set aside judgment of conviction and sentence" in the trial court. He asserted that the State took custody of his black iPhone 11 when he was arrested on June 13, 2021, and that he informed several law enforcement officers that his phone contained text messages between him and Doe. Marcum argued that the State committed a *Brady* violation by

failing to provide him the text messages from his phone, which he claimed were exculpatory and relevant to impeach Doe's trial testimony. Marcum attached affidavits from himself, his trial attorney, and the individual who retrieved his cell phone after his conviction, as well as screenshots of messages reportedly between him and Doe and a copy of an email from his trial counsel to him.

{¶ 7} The trial court ordered the State to respond to Marcum's petition by April 28, 2023, and Marcum had until May 19, 2023 to file a reply memorandum. Marcum moved to quash the court's scheduling order on the ground that the court lacked statutory authority to set a briefing schedule; he asserted that the State was required to respond within 10 days of the filing of his petition, pursuant to R.C. 2953.21(E). The State filed its response to the petition on April 27, 2023. Marcum moved to strike the alleged untimely filing.

{¶ 8} On May 26, 2023, the trial court denied the petition for postconviction relief. It held that Marcum's petition was untimely and that Marcum did not show that he was unavoidably prevented from discovering the facts upon which he relied. The court further concluded that, even if the petition were timely, it nevertheless lacked merit. The court stated that "nothing in the text messages constitutes new evidence that is material to the defendant's guilt or innocence in this case." In addition, the court found no evidence that the text messages were suppressed by the State and that there was no reasonable probability that, had they been disclosed to the defense, the jury's verdict would have been different.

{¶ 9} Marcum appeals from the trial court's judgment, raising three assignments of

error.    We will address them in an order that facilitates our analysis.

## II. Timeliness of Marcum's Petition for Postconviction Relief

{¶ 10} In his second assignment of error, Marcum claims that the trial court erred in concluding that his petition was untimely.    Specifically, he asserts that he was unavoidably prevented from submitting a timely petition due to his appellate counsel's delay in providing him a copy of the trial transcript.    We agree with Marcum that his petition was timely, albeit not for the reason he advances.

{¶ 11} A petition for postconviction relief "is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction."    *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, 29 N.E.3d 391, ¶ 37 (10th Dist.).    "A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment."    *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48.

{¶ 12} When a defendant has pursued a direct appeal of his or her conviction, as Marcum has, a petition for postconviction relief must be filed no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2).    Trial courts lack jurisdiction to consider an untimely or successive petition for postconviction relief unless the untimeliness is excused under R.C. 2953.23(A).    *State v. Taylor*, 2021-Ohio-1670, 170 N.E.3d 1310, ¶ 38 (2d Dist.), citing *State v. Current*, 2d Dist. Champaign No. 2012-

CA-33, 2013-Ohio-1921, ¶ 16.

{¶ 13} A court may consider an untimely petition if both of the following apply: (1) the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim, or the United State Supreme Court has recognized a new federal or state right that applies retroactively, and (2) the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty. R.C. 2953.23(A)(1). "Each of these showings is a jurisdictional requirement and both must be met before a trial court may consider an otherwise-untimely petition for post-conviction relief." *State v. Moody*, 2d Dist. Montgomery No. 27737, 2018-Ohio-2561, ¶ 4.

{¶ 14} Here, the transcripts of Marcum's jury trial and sentencing hearing were filed in Marcum's direct appeal on January 19, 2022; the clerk of court issued an App.R. 11(B) notice that day. *See State v. Marcum*, 2d Dist. Montgomery No. 29300. On March 21, 2022, appellate counsel for Marcum filed a motion for an extension of time to file his appellate brief, citing in part that jury selection had not been transcribed; the praecipe to the court reporter had expressly requested that voir dire be included. We granted the extension, and the transcript of voir dire was filed on April 13, 2022. The clerk promptly issued an amended App.R. 11(B) notice.

{¶ 15} The trial court found that Marcum's petition was untimely, reasoning that the written transcripts were filed on January 19, 2022, and the petition was filed more than 365 days later. However, we have held that the term "trial transcript" as used in R.C. 2953.21(A)(2) means those transcripts that are objectively necessary for inclusion in the

appellate record. *See State v. Deaton*, 2019-Ohio-2128, 137 N.E.3d 696, ¶ 14-15 (2d Dist.). A transcript of voir dire – part of the trial itself – satisfies that standard. *See id.* The fact that Marcum ultimately did not raise on direct appeal any issues regarding jury selection is irrelevant. *Id.* at ¶ 15.

{¶ 16} Where the record is supplemented with a transcript that was objectively necessary for the inclusion in the appellate record, the time for filing the petition for postconviction relief begins to run from the filing of the supplemental transcript. Marcum's petition was filed within 365 days of the filing of the transcript of the voir dire portion of his trial. Accordingly, his petition was timely filed, and we need not address his argument that he was unavoidably prevented from submitting a timely petition due to his appellate counsel's delay in providing him a copy of the trial transcript.

{¶ 17} Marcum's second assignment of error is sustained.

### III. Timeliness of the State's Response

{¶ 18} In his third assignment of error, Marcum claims that the trial court erred when it set submission dates and permitted the State to file an untimely answer without requesting leave and showing good cause. He argues that R.C. 2953.21(E) required the State to file its response by February 2, 2023.

{¶ 19} When a petition for postconviction relief is filed, the clerk of court must docket the petition and promptly bring it to the trial court's attention. R.C. 2953.21(B). In addition, the clerk "immediately shall forward a copy of the petition * * * to the prosecuting attorney of the county served by the court." *Id.* "Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause

shown, the prosecuting attorney shall respond by answer or motion." R.C. 2953.21(E).

**{¶ 20}** In this case, the record does not reflect when the trial court and prosecutor each became aware of Marcum's petition for postconviction relief. The trial court's entry setting submission dates was filed almost three months after Marcum filed his petition. It is undisputed that the State filed its response within the court's deadline.

**{¶ 21}** We find no error in the trial court's setting submission dates and permitting the State to file a response. The time provided in R.C. 2953.21(E) for the State to respond to a petition is directory, not mandatory. *State v. Quinn*, 2017-Ohio-8107, 98 N.E.3d 1184, ¶ 24 (2d Dist.), citing *State v. Kingsolver*, 2d Dist. Greene No. 2002-CA-84, 2003-Ohio-3833, ¶ 9 (addressing former R.C. 2953.21(D), now R.C. 2953.21(E)). The trial court has the discretion to extend the deadline for responding to the petition.

**{¶ 22}** We further note that "[t]he State is not required to file a response to a postconviction petition, and the trial court is not required to consider the State's response, if any, before ruling on the petition." *Kingsolver* at ¶ 9, citing *State v. Hansbro*, 2d Dist. Clark No. 2001-CA-88, 2002-Ohio-2922, ¶ 11; *State v. DeVaughns*, 2017-Ohio-475, 84 N.E.3d 332, ¶ 23 (2d Dist.) (rejecting petitioner's argument that the trial court was required to grant his petition for postconviction relief simply because the State allegedly did not file a timely response). Because the trial court has an independent obligation to analyze the petition under R.C. 2953.21(D), any error in allowing the State's response would be harmless. *See State v. Hartman*, 2d Dist. Montgomery No. 27162, 2017-Ohio-7933, ¶ 10-11, citing *State v. McCabe*, 4th Dist. Washington No. 97CA32, 1998 WL 725985 (Sept. 14, 1998).

**{¶ 23}** Marcum's third assignment of error is overruled.

### IV. Merits of Marcum's *Brady* Claim

**{¶ 24}** Marcum's first assignment of error challenges the trial court's denial of his *Brady* claim without a hearing.

**{¶ 25}** The postconviction relief statute permits "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to file a petition in the trial court, stating the grounds for relief relied upon and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. R.C. 2953.21(A)(1)(a)(i). The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief. R.C. 2953.21(A)(1)(b). To prevail on a petition for postconviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

**{¶ 26}** The postconviction relief statutes do "not expressly mandate a hearing for every postconviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in addressing a petition for postconviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing. *Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 51. Before granting a hearing, the trial court must determine whether there are substantive grounds for relief. R.C. 2953.21(D). In making that determination, the court must consider, in addition to the petition, the supporting affidavits, the

documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. *Id.*

**{¶ 27}** A trial court may dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus; *Gondor* at ¶ 51.

**{¶ 28}** We review the trial court's denial of a petition for postconviction relief for an abuse of discretion. *Gondor* at ¶ 52; *Taylor*, 2021-Ohio-1670, 170 N.E.3d 1310, at ¶ 40. An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 29}** Marcum alleged that the State had violated his constitutional rights by withholding exculpatory or impeachment evidence, contrary to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Disciplinary Counsel v. Kellogg-Martin*, 124 Ohio St.3d 415, 2010-Ohio-282, 923 N.E.2d 125, ¶ 24, citing *Brady* at 87; *State v. Jenkins*, 2d Dist. Montgomery No. 28595, 2020-Ohio-5409, ¶ 20.

**{¶ 30}** To establish a *Brady* violation, the defendant must demonstrate that (1) the

prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material. *State v. Housley*, 2d Dist. Miami No. 2019-CA-12, 2020-Ohio-1143, ¶ 19, citing *State v. Wade*, 2d Dist. Clark No. 2006-CA-108, 2007-Ohio-6611, ¶ 12. Evidence suppressed by the State "shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Aldridge*, 120 Ohio App.3d 122, 145, 697 N.E.2d 228 (2d Dist.1997), quoting *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. The defendant bears the burden of proving that evidence was materially exculpatory. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 102.

{¶ 31} When reviewing a *Brady* claim, the focus is "whether, in the absence of the undisclosed evidence, the defendant received a fair trial, i.e., a trial resulting in a verdict worthy of confidence; the analysis is not based on the likelihood of a different verdict." *State v. Bendolph*, 2018-Ohio-1729, 111 N.E.3d 872, ¶ 45 (2d Dist.). "The rule in *Brady* only applies to evidence unknown to the defendant at the time of the trial." *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 17; *Housley* at ¶ 20.

{¶ 32} Here, Marcum has not demonstrated a *Brady* or discovery violation by the State. Significantly, the evidence that allegedly was not disclosed – text messages between Marcum and Doe from June 12, 2021 – were not unknown to Marcum. Marcum stated in his affidavit that he had informed Officer Sherri Jackson while being transported to the Trotwood police station that his cell phone contained text messages from Doe showing that she was not in any distress. Marcum Aff., ¶ 2. Marcum further stated that

he had offered to show the messages to Detective Jeremy Kinder during a June 13, 2021 interview. *Id.* at ¶ 3. In July 2021, while discussing the State's discovery response, Marcum told his defense counsel that text messages contained on his cell phone had not been included. *Id.* at ¶ 5. Both Marcum and his defense counsel indicated that defense counsel attempted to get copies of the text messages from Cricket Wireless, Marcum's cell phone service provider, but Cricket did not keep records of text messages. *Id.* at ¶ 11-12; Gramza Aff., ¶ 2; Gramza email. After Marcum's conviction, the mother of his four youngest children retrieved his phone from the police, accessed it with the password that Marcum provided her, and sent him screenshots of the text messages. Ansley Aff.

{¶ 33} "The purpose of discovery is to even the playing field, avoid surprise, and in a criminal case, to allow the accused to intelligently defend him or herself. Its purpose is not for the State to do the work of the defense attorney." *State v. Clark*, 2d Dist. Darke No. 2021-CA-1, 2021-Ohio-2531, ¶ 29. While defense counsel sought copies of the text messages from Cricket Wireless, there is no indication that Marcum pursued access to contents of his cell phone through the trial court prior to trial; no motion to compel or requesting analysis of the phone was filed.

{¶ 34} Moreover, there is no suggestion that the State obtained access to Marcum's phone and had copies of the text messages yet failed to provide them in discovery. Rather, the record indicates that the State disclosed the communications between Marcum and Doe that it had. The July 29, 2021 discovery packet receipt reflects that the State provided 36 pages of screenshots from Doe's phone, 3 pages of screenshots from her brother's phone, and a Trotwood police report that contained,

among other records, five pages of Facebook Messenger screenshots. The August 17, 2021 discovery packet receipt included a disc of Marcum's Facebook records and Doe's consent to search for her cell phone. Although the State had physical possession of Marcum's cell phone, *Brady* did not require the State to obtain the contents of his phone. "[T]he state cannot suppress records that it does not have — and that have never been in the possession of a state agent." *State v. Jury*, 2022-Ohio-4419, 203 N.E.3d 222, ¶ 17 (6th Dist.).

**{¶ 35}** Finally, we agree with the trial court that "nothing in the text messages constituted new evidence that was material to the defendant's guilt or innocence in this case." Marcum was convicted of only three of the nine charges: two counts of rape (substantially impaired victim) and one count of gross sexual imposition (substantially impaired victim). To convict Marcum of rape under R.C. 2907.02(A)(1), the State had to prove that Marcum had sexual conduct with Doe, that her ability to consent had been substantially impaired, and that Marcum knew or had reasonable cause to believe that Doe was substantially impaired. *Marcum*, 2022-Ohio-3576, 198 N.E.3d 599, at ¶ 41. Further, to convict Marcum of gross sexual imposition under R.C. 2907.05(A)(2), the State had to prove that Marcum had sexual contact with Doe and that he substantially impaired the judgment of Doe by administering a drug to her surreptitiously, by force, or through deception. *Id.*

**{¶ 36}** We noted in Marcum's direct appeal that "[t]he six not guilty verdicts make it very clear that this was not a case in which the jury blindly followed the complaining witness's testimony. The jury discerned what it believed from Doe's story and what it

believed from Marcum's story, which resulted in six not guilty verdicts and three guilty verdicts. The fact that the three guilty verdicts all centered around counts from the indictment that required Doe's being substantially impaired was understandable, given that Marcum himself provided sufficient testimony to establish that Doe was substantially impaired as a result of methamphetamine that Marcum had administered to Doe." *Id.* at ¶ 44.

**{¶ 37}** Marcum asserted in his petition that the content of the undisclosed text messages demonstrated that Doe intended to leave her house with him just after midnight, leaving her minor child alone in the house. He further asserted that the messages would have disproved the State's theory that he lured Doe into his vehicle, would have impeached Doe's testimony regarding when she had access to her phone on June 12, and would have shown that the sexual conduct was consensual. Having reviewed the trial transcript, the text messages at issue relate more closely to the offenses of which Marcum was acquitted. None are exculpatory, particularly as to the substantial-impairment offenses. Even assuming that the State had a duty to disclose the text messages to Marcum, any error is now harmless beyond a reasonable doubt.

**{¶ 38}** Marcum's first assignment of error is overruled.

### V. Conclusion

**{¶ 39}** Notwithstanding the trial court's erroneous conclusion that the petition for postconviction relief was untimely, it correctly determined that the petition was without merit. The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.